652 A.2d 1209

STATE OF NEW JERSEY, PLAINTIFF–RESPONDENT,
v. DANIEL NWOBU, DEFENDANT–APPELLANT.

STATE OF NEW JERSEY, PLAINTIFF–APPELLANT, v. JAMES
CALLENDER, BRYAN HARRIS, AND JAMES OVERBY,
DEFENDANTS–RESPONDENTS.

Argued October 12, 1994—Decided February 8, 1995.

*Daniel V. Gautieri,* Assistant Deputy Public Defender, argued the cause for appellant Daniel Nwobu (*Susan L. Reisner,* Public Defender, attorney).

*Gary A. Thomas,* Assistant Prosecutor, argued the cause for appellant State of New Jersey (*Clifford J. Minor,* Essex County Prosecutor, attorney).

*Stuart A. Minkowitz,* Assistant Prosecutor, argued the cause for respondent State of New Jersey (*John J. Fahy,* Bergen County Prosecutor, attorney, *Mr. Minkowitz* and *John J. Scaliti,* Assistant Prosecutor, on the briefs).

*Stephen A. Caruso,* Assistant Deputy Public Defender, argued the cause for respondent James Callender (*Susan L. Reisner,* Public Defender, attorney).

*Barbara A. Hedeen,* Assistant Deputy Public Defender, argued the cause for respondent Bryan Harris (*Susan L. Reisner,* Public Defender, attorney, *Diane Toscano,* Assistant Deputy Public Defender, on the letter brief).

*Donald T. Thelander,* Assistant Deputy Public Defender, argued the cause for respondent James Overby (*Susan L. Reisner,* Public Defender, attorney).

*Richard W. Berg,* Deputy Attorney General, argued the cause for *amicus curiae,* Attorney General of New Jersey (*Deborah T. Poritz,* Attorney General, attorney).

The opinion of the Court was delivered by

O'HERN, J.

The central issue in these two appeals is whether the prosecutors arbitrarily rejected defendants' admission into Pretrial Intervention programs (PTI). PTI is an alternative procedure to the traditional process of prosecuting criminal defendants. It is a diversionary program through which certain offenders are able to avoid criminal prosecution by receiving early rehabilitative services expected to deter future criminal behavior. PTI is intended to augment the criminal justice system when prosecution would be

ineffective, counterproductive, or unnecessary. A second issue, in one of the cases, is whether the prosecution of the defendant after completion of PTI would violate his double-jeopardy rights.

### NWOBU

Daniel Nwobu is in his early thirties. In 1991 a Bergen County Grand Jury charged him with second-degree theft by deception. The indictment alleged that over approximately a six-week period, he stole and forged checks totalling more than $75,000 from his employer, Simon & Schuster, a major publishing company. After arraignment, he applied for entry into the Bergen County PTI.

The PTI director denied the application. He set forth the following reasons for that denial: (1) Defendant failed to offer any compelling reasons to overcome the statutory presumption against pretrial intervention for second-degree offenders; (2) the prosecutor did not support defendant's PTI application; (3) defendant's conduct was part of a continuing pattern of anti-social behavior; and (4) admission into PTI would fail to serve as a sufficient sanction or deterrent.

Defendant appealed to the Law Division, pursuant to PTI Guideline 8 of *Rule* 3:28, for an order requiring reconsideration of the application or mandating defendant's admission into PTI. The Bergen County Prosecutor wrote a brief letter to defendant's attorney informing him that he opposed defendant's entry into PTI. The letter stated:

> The Bergen County Prosecutor's Office has carefully considered the [PTI] application of [Nwobu]. We regret to inform you that this office opposes your client's entry into the program for the same reasons as previously stated by the [PTI] Director, Howard Williams.

Pending further information, the trial court ordered the prosecutor's office to "reevaluate and reconsider" defendant's PTI application and submit a written report to the court. The Prosecutor's office simply replied that the State's position remained unchanged. On April 30, 1993, the trial court ordered that defendant be admitted into PTI. However, because the court knew that the State would appeal, it stayed its ruling pending

completion of a written opinion. In its written decision on August 5, 1993, the court found that the prosecutor's denial of defendant's application for PTI was a patent and gross abuse of discretion because the prosecutor failed to provide a particularized statement of reasons regarding the rejection of defendant from PTI. The trial court held that it was inappropriate for the Prosecutor's Office to justify its decision by simply referring to the reasons offered by the PTI director. It stayed further prosecution.

On August 18, 1993, the State moved for leave to appeal from the trial court's order. However, at that time, the State did not seek a stay of defendant's participation in PTI. The Appellate Division granted the State's motion on September 22, 1993. Not until December 20, 1993, did the State request that the trial court stay defendant's participation in PTI pending the appeal. The trial court denied that request. After he successfully completed his six-month PTI term, defendant sought to dismiss the State's appeal as moot, fundamentally unfair, and in violation of his double-jeopardy rights.

The Appellate Division refused to dismiss the appeal. On the merits of the appeal, it held that the prosecutor's reliance on the PTI director's reasons to deny defendant's admittance into PTI was proper as long as the reasons given by the PTI director were valid. Finding the prosecutor's reasons valid, it reversed the trial court's judgment and remanded the case for further criminal proceedings. We granted defendant's motion for leave to appeal the Appellate Division's decision.

## CALLENDER, HARRIS, AND OVERBY

On June 26, 1990, defendants, James Callender, Bryan Harris, and James Overby, young men in their twenties with no prior criminal histories, were at a park in East Orange drinking beer and waiting to play basketball. Also at the park were Brooklyn Smith, Jr., an off-duty New Jersey State Trooper, and his three-year-old son, Brooklyn Smith, III. While defendants were waiting for a game, one of them threw a "blockbuster," a firecracker with

the power of one-quarter stick of dynamite. The firecracker was aimed at the basketball court but struck a tree limb that altered its course, causing it to explode within ten feet of Brooklyn, III. The boy was not physically harmed, but he was frightened and cried hysterically after the blockbuster detonated. There is conflicting evidence about which of the three men threw the explosive.

Following the explosion a crowd of bystanders attacked the defendants. Defendant Overby suffered a severe eye injury in the brawl. Eventually his right eye had to be removed. Police arrived at the scene and apprehended the defendants. The police discovered fireworks in the car that Overby occupied when apprehended.

An Essex County Grand Jury has charged defendants with second-degree possession of a destructive device for an unlawful purpose, contrary to *N.J.S.A.* 2C:39–4c; third-degree arson, contrary to *N.J.S.A.* 2C:17–1; and third-degree possession of a prohibited destructive device, contrary to *N.J.S.A.* 2C:39–3a. Because of its explosive power the blockbuster meets the statutory definition of a "destructive device," that is, "any device, instrument or object designed to explode or produce uncontrolled combustion, including * * * any explosive * * *." *N.J.S.A.* 2C:39–1c(1). The State did not charge illegal possession of fireworks, a disorderly persons offense under *N.J.S.A.* 21:3–8.

In the pretrial phase, before defendants formally applied for PTI, the trial court requested that the Essex County Prosecutor's Office make an initial determination regarding the option of PTI for defendants. The prosecutor would not consent to defendants' admission into PTI. He offered the following reasons in a letter to the court on August 3, 1992:

(1) Pursuant to Guideline 3(i) of the Guidelines for Operation of Pretrial Intervention in New Jersey in *R.* 3:28, an application for PTI "should generally be rejected if the offense was deliberately committed with violence or threat of violence."

(2) Pursuant to the same guideline, "a person charged with a first or second degree crime should ordinarily not be considered

for enrollment in PTI except on a joint application of the defendant and the Prosecutor."

(3) "[S]ociety's interest in prosecuting the defendants and deterring others far outweighs any interest the defendant[s] might have in obtaining PTI."

(4) "[T]he defendants have not presented anything to [the prosecutor] which would indicate their backgrounds or characters are so exceptional as to warrant their entry into PTI despite the nature and degree of the offenses charged."

(5) Pursuant to Guideline 3(j), "the impact of a defendant's diversion on the prosecution of co-defendants should be considered. Given the joint nature of the defendants' participation in this case, diversion of any one defendant would have an adverse effect on the prosecution of the others."

Defendants appealed the prosecutor's rejection of their admission into PTI and supplied further information about their backgrounds to the prosecutor. At that time, defendant Callender was twenty-seven years old, had graduated from prep school, and had attended college for a short period of time. He had been consistently employed since leaving college and also volunteered his time for community activities. Callender has no criminal history. Harris was twenty-four years old, married, and honorably discharged after serving in the Persian Gulf War. He plans to attend college. Overby was in his late twenties, unmarried, and unemployed. He has two children that he is obligated to support financially. Like Callender, neither Harris nor Overby has a criminal history.

The trial court requested that the prosecutor reconsider his disposition and evaluate defendants' respective backgrounds. The prosecutor responded to that request with separate letters, applicable to each defendant. The prosecutor again objected to defendants' admission into PTI. Each letter contained a one- to three-paragraph review of the background information provided by defendants. The prosecutor's reasons for opposing each defendant's entry into PTI were set forth in an identical, final paragraph in each response. That paragraph stated:

This information regarding the defendant's background was not provided to me when I originally considered his request for entry into P.T.I. in early August. I

have reconsidered the defendant's request in light of this information and the considerations set forth in my letter of August 3, 1992. * * * While there are certainly positive aspects to the defendant's background, they do not, in my view, outweigh the need for prosecution.

On November 30, 1992, the trial court ordered that defendants be admitted into PTI, but stayed the order until December 15, 1992, to allow the State time to appeal. The court reasoned that the prosecutor abused his discretion by rejecting defendants' admission into PTI because he did not consider all the relevant factors and did not evaluate separately each defendant's amenability to the rehabilitative process. The Appellate Division affirmed the Law Division decision. It agreed with the trial court that an abuse of prosecutorial discretion had occurred.

The State immediately applied for a stay of the Appellate Division's decision pending leave to appeal to this Court. The Appellate Division granted the motion for a stay, and we granted the State's motion for leave to appeal.

I

PTI was first established, with no enabling legislation, by *Rule* 3:28 in 1970, as authority for the vocational-service pretrial intervention program operated by the Newark Defendants Employment Project. By 1976 the Court had approved programs for twelve counties. Pressler, *Current N.J. Court Rules,* comment 1 on *R.* 3:28 (1995). Subsequently the Legislature enacted a statewide program of pretrial intervention as part of the 1979 Code of Criminal Justice. *N.J.S.A.* 2C:43–12 to –22. The Code provisions generally mirrored the procedures and guidelines previously established under *Rule* 3:28. Although pretrial diversion is by its nature part of the prosecutor's charging function, the statutes, procedures, and guidelines involve the judiciary in the administration of PTI. As a practical matter, criminal case management today is a three-part effort involving prosecutors, courts, and defenders. Our judicial powers obviously "include the power to review the operation of court initiated procedures and to review the legal determinations made pursuant to these procedures." *State v. Leonardis,* 71 *N.J.* 85, 109, 363 *A.2d* 321 (1976).

Under current practice, admission into PTI is based on a recommendation by the criminal division manager, with the consent of the prosecutor. *R.* 3:28(b). Criminal division managers are judicial appointees selected by the assignment judge. When this case arose, the local PTI directors (predecessors to criminal division managers) made the initial determination regarding an individual's potential for admission into PTI. Typically such recommendations are forwarded to the prosecutor's office before submission to the court. The standards for review of PTI decisions are "firmly established" by our prior decisions. *State v. Dalglish,* 86 *N.J.* 503, 512, 432 *A.*2d 74 (1981). *See also State v. Sutton,* 80 *N.J.* 110, 402 *A.*2d 230 (1979); *State v. Maddocks,* 80 *N.J.* 98, 402 *A.*2d 224 (1979); *State v. Bender,* 80 *N.J.* 84, 402 *A.*2d 217 (1979); *State v. Smith,* 92 *N.J.* 143, 455 *A.*2d 1117 (1983). Those standards are generally couched in terms of the prosecutor's function, although the PTI director has a parallel involvement in the process. For example, the PTI director receives confidential information in processing the applications.

A recent Appellate Division opinion has well summarized the principles:

[The PTI] decision lies, in the first instance, with the prosecutor, and once he has determined that he will not consent to the diversion of a particular defendant, his decision is to be afforded great deference. In fact, the level of deference which is required is so high that it has been categorized as "enhanced deference" or "extra deference." Beyond this, it has been expressly noted that the scope of any review in this area is to be "severely limited." * * * Thus, judicial review, in actuality, exists "to check only the most egregious examples of injustice and unfairness."

The reason for this elevated standard of review stems from "[t]he need to preserve prosecutorial discretion in deciding whether to divert a particular defendant from the ordinary criminal process...." Prosecutorial discretion in this context is critical for two reasons. First, because it is the fundamental responsibility of the prosecutor to decide whom to prosecute, and second, because it is a primary purpose of PTI to augment, not diminish, a prosecutor's options.

The extreme deference which a prosecutor's decision is entitled to in this context translates into a heavy burden which must be borne by a defendant when seeking to overcome a prosecutorial veto of his admission into PTI. Specifically, "a defendant must 'clearly and convincingly establish that the prosecutor's refusal to sanction admission into [a PTI] program was based on *a patent and gross abuse of his discretion'* before a court [can] suspend criminal proceedings under *R.* 3:28 without prosecutorial consent."

[*State v. Kraft,* 265 *N.J.Super.* 106, 111–12, 625 *A.*2d 579 (1993) (citations omitted).]

We defined the "patent and gross abuse of discretion" standard in *State v. Bender, supra,* 80 *N.J.* at 93, 402 *A.*2d 217. To meet that standard a party must show that the prosecutor's decision failed to consider all relevant factors, was based on irrelevant or inappropriate factors, or constituted a "clear error in judgment." *Ibid.* Additionally, an abuse of discretion is "patent and gross" if it is shown "that the prosecutorial error complained of will clearly subvert the goals underlying Pretrial Intervention." *Ibid.* If a prosecutor fails to consider all relevant factors or considers irrelevant factors, a court may remand the matter for further consideration. *State v. DeMarco,* 107 *N.J.* 562, 567, 527 *A.*2d 417 (1987). If a prosecutor commits a clear error of judgment, a court may order that a defendant be enrolled in PTI. *Ibid.* "Whether the prosecutor has based his or her decision on an appropriate factor, however, is akin to a question of law, a matter on which an appellate court may supplant the prosecutor's decision." *Ibid.* (citing *State v. Maddocks, supra,* 80 *N.J.* at 104–05, 402 *A.*2d 224).

We promulgated Guidelines for Operation of Pretrial Intervention in New Jersey to provide courts and prosecutors with criteria for making PTI decisions. *R.* 3:28. Guidelines 1, 2, 3, and 8 are relevant to the instant cases.

Guideline 1 identifies five purposes of PTI. Those are: (1) to enable defendants to avoid ordinary prosecution by receiving early rehabilitative services expected to deter future criminal behavior; (2) to provide defendants who might be harmed by the imposition of criminal sanctions with an alternative to prosecution expected to deter criminal conduct; (3) to avoid burdensome prosecutions for "victimless" offenses; (4) to relieve overburdened criminal calendars so that resources can be expended on more serious criminal matters; and (5) to deter future criminal behavior of PTI participants.

Guideline 2 provides that "[a]ny defendant accused of crime shall be eligible for admission into a PTI program." That guideline also provides that a defendant should have an opportunity to supplement the PTI application with a presentation of "any facts or materials demonstrating the defendant's amenability to the

rehabilitative process, showing compelling reasons justifying the defendant's admission, and establishing that a decision against enrollment would be arbitrary and unreasonable."

Guideline 3 lists a number of factors to be considered when assessing a PTI application. Pursuant to Guideline 3(i), the nature of the offense must be considered and a PTI application "should generally be rejected" if the defendant's crime was: "(1) part of organized criminal activity; or (2) part of a continuing criminal business or enterprise; [1] or (3) deliberately committed with violence or threat of violence against another person; or (4) a breach of the public trust * * *."

Guideline 3 also provides that persons charged with first- or second-degree crimes "should ordinarily not be considered for enrollment in a PTI program except on joint application by the defendant and the prosecutor."

Guideline 3(j) provides that any impact on the prosecution of co-defendants caused by a defendant's diversion into PTI should be considered.

Finally, Guideline 8 establishes a number of procedural requirements. First, judges, prosecutors, and program directors (now, criminal division managers) must set forth, in writing, their reasons for any decision granting or denying a PTI application. Guideline 8 also entitles a defendant to challenge at a hearing the decision of the prosecutor or criminal division manager. If the reviewing court reverses the denial of the defendant's application, the State may seek leave to appeal to the Appellate Division. If the trial court affirms a denial of PTI, the defendant must wait until a judgment of conviction has been entered before appealing to the Appellate Division.

■ We have emphasized the importance of a statement of reasons accompanying any PTI decision by a judge, prosecutor, or

---

[1] *N.J.S.A.* 2C:43–12e(8) characterizes this factor as "a continuing pattern of anti-social behavior."

program administrator. *See State v. Leonardis, supra,* 71 *N.J.* at 114–15, 363 *A.*2d 321; *State v. Sutton, supra,* 80 *N.J.* at 116–17, 402 *A.*2d 230; *State v. Bender, supra,* 80 *N.J.* at 94, 402 *A.*2d 217. Such a statement serves four purposes: (1) It facilitates effective judicial review; (2) it assists in evaluating the success of the PTI program; (3) it affords the defendant the opportunity to prepare a response; and (4) it dispels suspicions of arbitrariness. *State v. Leonardis, supra,* 71 *N.J.* at 114–15, 363 *A.*2d 321.

■  The statement of reasons may not simply "parrot" the language of relevant statutes, rules, and guidelines. *State v. Sutton, supra,* 80 *N.J.* at 117, 402 *A.*2d 230. At a minimum, the prosecutor "should note the factors present in defendant's background or the offense purportedly committed which led [the prosecutor] to conclude that admission should be denied." *Ibid.* Additionally, the statement of reasons must not be vague. Rather, the prosecutor's reasons for rejection of the PTI application must be stated with "sufficient specificity so that defendant has a meaningful opportunity to demonstrate that they are unfounded." *State v. Maddocks, supra,* 80 *N.J.* at 109, 402 *A.*2d 224.

■  A reviewing court must assume, absent evidence to the contrary, that the prosecutor's office has considered all relevant factors in reaching the PTI decision. *State v. Dalglish, supra,* 86 *N.J.* at 509, 432 *A.*2d 74; *State v. Bender, supra,* 80 *N.J.* at 94, 402 *A.*2d 217. This presumption makes it very difficult to reverse a prosecutor's decision on that basis.

II

A.

■  Applying those principles to Nwobu's case, we must acknowledge at the outset that it was not a textbook example of how to handle a PTI application. Much of the difficulty may arise from the complexity of this particular case. We are not certain that the trial court had the benefit of all the materials that we have received. This case involves a rather sophisticated form of

commercial fraud. As we understand the scheme, Nwobu or his confederates set up dummy bank accounts using, for example, the name Simon Printing & Publishing Company to deposit the stolen checks. Using the alias, John Holmes, Nwobu made such illicit bank transactions. Various banks were involved. Surveillance cameras and bank tellers allegedly identified Nwobu as the one involved in the bank transactions. The trial court was fully prepared to conduct the PTI hearing but the assistant prosecutor assigned to the hearing had no familiarity with these facts, even though an assessment of the "facts of the case" is required by *N.J.S.A.* 2C:43–12e(2). Another prosecutor from the fraud section could not furnish many more specifics. Still, we do not believe that the prosecutor could not adopt the PTI director's reasoning as his own.

None of the four purposes of the statement of reasons enumerated above is sacrificed when a prosecutor relies on a director's statement of reasons. First, a defendant is not inhibited from ascertaining the State's reasons for its decision. He or she may evaluate the program director's statement of reasons and respond accordingly. Second, a court can effectively review the director's statement of reasons to determine whether an abuse of discretion has occurred. Third, the success of PTI can still be evaluated because a record of the reasons for denial of PTI can be found in the director's statement. Fourth, suspicions of arbitrariness are dispelled as long as the prosecutor can enunciate principled reasons for his or her decision to reject a PTI application even if those reasons are the same as the program director's. As a result, we conclude that no patent and gross abuse of discretion by the prosecutor occurred.

The trial court was understandably troubled by the circularity of the reasoning: The PTI director rejected the application because the prosecutor would not consent to it and the prosecutor rejected the application because the PTI director had rejected it. No one (or so it appeared to the court) had taken the time to assess the defendant's claims of a very limited involvement in the

scheme. Defendant insists that "the Prosecutor and Director have failed to scrutinize or understand what the investigatory material show[s] with respect to Daniel Nwobu." But the claims reflecting the weight of the evidence, standing alone, are not dispositive in the PTI process. *State v. Smith, supra,* 92 *N.J.* at 147, 455 *A.*2d 1117.

In the speedy-trial context, the Appellate Division has acknowledged that the two actors in the PTI process (the prosecutor and the program director) need not be equally involved in each PTI application. *State v. Rosario,* 237 *N.J.Super.* 63, 66–68, 566 *A.*2d 1173 (1989), *certif. denied,* 122 *N.J.* 139, 584 *A.*2d 212 (1990).

Additionally, because a second-degree offender's admission into PTI requires the approval of both the program director and the prosecutor, interplay between those two individuals is not surprising or inappropriate. Absent refinement of our rules to require completely distinct reasoning, the prosecutor's reliance on the program director's statement of reasons is proper. The statement of reasons must then be evaluated for its adequacy.

## B.

The PTI director's statement of reasons appears to be adequate. Although the statement does not discuss the defendant's background, it refers to two factors regarding the alleged offense: that it was a second-degree offense and was a part of "a continuing pattern of anti-social behavior." That finding of "a continuing pattern of anti-social behavior" (the factor drawn from *N.J.S.A.* 2C:43–12e(8)), is not critical to our assessment of the case. Ordinarily that factor or the related factor of "a continuing criminal business or enterprise" in Guideline 3(i) is predicated on more long-standing criminal involvement. The PTI director also states that PTI would not serve as a sufficient deterrent or sanction. That assertion, however, is somewhat conclusory. In third- or fourth-degree offenses the opinions of those in charge of the program as to the qualitative nature of the offense may serve as guidance.

That Nwobu is charged with a second-degree crime is the single most important factor involved. To overcome the presumption against PTI, defendant must establish "compelling reasons" for admission into PTI. The defendant misunderstands the significance of this concept. The first question asked of Nwobu's counsel at oral argument was "What are the compelling reasons for your client's admission into PTI?" The answer was: "He is only guilty of a third-degree crime." But the PTI process is not designed to assess the weight of the State's case. "[T]he appropriate administration of the program militates against basing enrollment upon the weight of the evidence of guilt." *State v. Smith, supra,* 92 *N.J.* at 147, 455 *A.*2d 1117.

▮ In the related context of criminal sentencing, the seriousness of the offense is the most important factor to be considered. There is a presumption of incarceration for first- and second-degree offenders and that presumption may not be overcome except in " 'truly extraordinary and unanticipated circumstances' " when the sentencing court finds that a "serious injustice" exists. *State v. Roth,* 95 *N.J.* 334, 358, 471 *A.*2d 370 (1984) (quoting Fair and Certain Punishment, Report of The Twentieth Century Fund Task Force on Criminal Sentencing (1976)). Thus, in *State v. Cannon,* 128 *N.J.* 546, 563, 608 *A.*2d 341 (1992), we reasoned that the Intensive Supervision Program (ISP) was not available for first- and second-degree crimes. (The Legislature has since authorized ISP for a limited class of first- and second-degree crimes. *N.J.S.A.* 2C:43–11.)

▮ It is true that one need not "be Jean Valjean," *State v. Mickens,* 236 *N.J.Super.* 272, 279, 565 *A.*2d 720 (App.Div.1989), to establish compelling reasons for admission into PTI, but there must be a showing greater than that the accused is a first-time offender and has admitted or accepted responsibility for the crime. To forestall imprisonment a defendant must demonstrate something extraordinary or unusual, something "idiosyncratic," in his or her background. *State v. Jabbour,* 118 *N.J.* 1, 7, 570 *A.*2d 391 (1990). In the case of first- and second-degree crimes, something

of this nature must be presented to establish compelling reasons for admission into PTI.

There is nothing extraordinary or unusual about Nwobu's case. He seems to have led a blameless life until now. He has unfortunately been implicated in a very serious commercial fraud.

We might prefer incorporation of more detailed information about defendant's background into the statement of reasons. But none of the three prongs supporting a finding of an abuse of discretion is present. The prosecutor or director considered all relevant factors in making the PTI decision. The trial court was particularly troubled by the notable lack of preparation by the prosecutor's office, leading to the conclusion that the prosecutor had not considered all the relevant factors. Despite arguments relating to an assistant prosecutor's lack of preparation for oral argument, there is nothing to show that the prosecutor's office did not know that defendant had been a law-abiding citizen or was unaware of any other aspect of his character relevant to a PTI decision. Thus, there was no failure to consider relevant factors. Because defendant does not claim that the State relied on irrelevant factors, the second prong of the test requires no further evaluation.

Defendant does claim that the prosecutor made a clear error of judgment, thus meeting the third prong of the abuse of discretion test. Such an error is one that is "based on appropriate factors and rationally explained," but "is contrary to the predominant views of others responsible for the administration of criminal justice." *State v. Dalglish, supra,* 86 *N.J.* at 510, 432 *A.*2d 74. A reviewing court " 'does not have the authority in PTI matters to substitute [its own] discretion for that of the prosecutor.' " *State v. Kraft, supra,* 265 *N.J.Super.* at 112, 625 *A.*2d 579 (quoting *State v. Von Smith,* 177 *N.J.Super.* 203, 208, 426 *A.*2d 59 (App.Div. 1980)).

The concept of a "clear error of judgment" is a familiar one in the criminal practice. In other contexts we have explained that an

error in applying guidelines to the facts of the case must be "clearly unreasonable so as to shock the judicial conscience," *State v. Roth, supra,* 95 *N.J.* at 365, 471 *A.*2d 370, before it may be branded a clear error of judgment. Such an error is one that "could not have reasonably been made upon a weighing of the relevant factors." *Id.* at 366, 471 *A.*2d 370. We seek to avoid the substitution of appellate judgment for the judgment of the agency responsible for the function involved, be it prosecutorial or judicial. The objectives of PTI are spelled out in the Code of Criminal Justice and the Rules of Court.

> It is deviation from those objectives, in view of the standards and criteria therein set forth, which constitutes error. To hold otherwise would allow for ad hoc, instinctive decisions on appeal which could result in merely perpetuating disparity on a different level and which would certainly thwart the development of defined, objective standards.
>
> [*People v. Cox,* 77 *Ill.App.*3d 59, 32 *Ill.Dec.* 946, 952, 396 *N.E.*2d 59, 65 (1979), *rev'd,* 82 *Ill.*2d 268, 45 *Ill.Dec.* 190, 412 *N.E.*2d 541 (1980), *quoted in State v. Roth, supra,* 95 *N.J.* at 365, 471 *A.*2d 370.]

The prosecutor did not deviate from the objectives of PTI as set forth in the program guidelines. PTI is presumptively unavailable for second-degree offenders. Defendant's status is not qualitatively distinguishable from any other first-time offender who must confront that guideline. Defendant's principal challenge to the prosecutor's judgment is that he is not a second-degree offender but only a minor actor in a larger fraud committed against the employer. That argument goes to the weight of the evidence of guilt, not necessarily to eligibility for PTI. The amount of the theft and the relative time period involved suggest more than a momentary loss of moral resolve.

The question is not whether we agree or disagree with the prosecutor's decision, but whether the prosecutor's decision could not have been reasonably made upon weighing the relevant factors. We cannot say that such a decision could not have been reasonably made in this setting.

### III

Applying the legal principles set forth above to defendants Callender, Harris, and Overby, we reverse the Appellate Division's

decision that the prosecutor committed a patent and gross abuse of discretion in rejecting defendants' PTI applications without considering defendants' backgrounds and their individual prospects for rehabilitation.

PTI decisions are "primarily individualistic in nature" and a prosecutor must consider an individual defendant's features that bear on his or her amenability to rehabilitation. *State v. Sutton, supra,* 80 *N.J.* at 119, 402 *A.*2d 230. That the prosecutor rejected PTI for each of these defendants does not mean that he did not consider the individual features of each defendant.

The record establishes that the prosecutor considered defendants' individual characteristics. The prosecutor wrote to each defendant a letter that recited relevant factors regarding his background and concluded that, despite positive aspects of his background, the need for prosecution outweighed the benefits of diversion. The trial court faulted the prosecutor for not specifying the evidence that he had against the defendants individually. It reasoned that defendants had the right to be considered separately, "not only as to their backgrounds but as to their *involvement,* and no meaningful review by the Court can be had where that does not occur." (Emphasis added.) But the available evidence was in conflict and the State disputed the trial court's assessment of the evidence that was available. (The trial court characterized Harris as a "benign intervenor," but witnesses at the scene identified Harris as the one who threw the firecracker.)

Given the conflicting evidence and the pitfalls of offering a plea or diversion to one of three actors, the rationale of the prosecutor's decision, though the same in each case, was not arbitrary. PTI Guideline 3(j) allows consideration of the effect on the prosecution of co-defendants caused by another defendant's diversion into PTI. In a multi-defendant case, a jury might speculate about why some actors were not charged.

There is some suggestion that the involvement of a law enforcement officer may have affected the prosecutor's decision. The

firecracker exploded near the state trooper's child and the trooper was identified as one of the assailants of Overby, who lost his eye. If that involvement were an influence on the decision, we would not hesitate to correct the action. "[A]ction upon public opinion against a particular defendant cannot be tolerated in our criminal justice system." *State v. Humphreys*, 89 *N.J.* 4, 15, 444 *A.*2d 569 (1982). The record, however, does not establish that the prosecutor considered such an inappropriate factor in denying defendants' applications.

That leaves for consideration whether the prosecutor's decision was a clear error in judgment. Throwing the equivalent of one-quarter stick of dynamite into a crowd is not a petty offense. Let us transpose the facts slightly and assume that a terrorist had thrown the same device into a crowded restaurant intending to injure civilians. There would be no doubt that PTI would be out of the question. What clouds the PTI issues are the claims of innocence: that defendants had no intent to harm but were only foolish pranksters tossing firecrackers. But that goes to the weight of the evidence, which standing alone "is not dispositive in a court's review of the evaluation of [PTI] candidates." *State v. Smith, supra,* 92 *N.J.* at 147, 455 *A.*2d 1117. If a jury agrees with the prosecutor, these defendants will be found to have had an unlawful purpose, an intent to injure when they tossed the device. *N.J.S.A.* 2C:39–4c. Only time will tell whether a jury will agree with the prosecutor's assessment of the facts.

Denying PTI to those who intentionally throw destructive devices into a crowd reflects legitimate considerations that are supported by the Guidelines. Given that a basis exists within the PTI guidelines for the prosecutor's decision, it was not a clear error of judgment. Second-degree offenders are presumptively ineligible for PTI.

Because the prosecutor's decision did not fail to consider relevant factors, was not based on inappropriate factors, and was not a clear error in judgment, the prosecutor's rejection of the defendants' PTI applications was not an abuse of discretion. We

reverse the judgment of the Appellate Division. The defendants may be prosecuted.

## IV

The final issue to be addressed is whether prosecution of Nwobu after his entry into PTI violates double jeopardy. That clause protects defendants from successive prosecutions for the same offense and from multiple punishments for the same offense. *North Carolina v. Pearce*, 395 *U.S.* 711, 717, 89 *S.Ct.* 2072, 2076, 23 *L.Ed.*2d 656, 664–65 (1969).

PTI closely resembles probation, which has been recognized as a criminal sanction. *See State v. Watson*, 183 *N.J.Super.* 481, 484, 444 *A.*2d 603 (App.Div.1982) (after untimely appeal, increase in probationary sentence that had commenced disallowed). However, punishment in the form of probation normally follows a finding of guilt. By its nature PTI is designed to furnish rehabilitative services in place of the normal criminal findings of guilt. In any event, we need not resolve whether PTI is a criminal punishment.

We are satisfied that because Nwobu lacked a reasonable expectation of finality in his status when the trial court ordered him into PTI, double-jeopardy provisions do not preclude the State's prosecution of him. In the context of governmental appeals from the imposition of sanctions, "the touchstone of the double jeopardy analysis lies in the expectation of finality that a defendant vests in his [or her] sentence." *State v. Sanders*, 107 *N.J.* 609, 619, 527 *A.*2d 442 (1987).

Defendant argues that he should not be charged with knowledge of the State's right to appeal because the right to appeal is set forth in court rules rather than statute. That argument is unconvincing. Equally unconvincing is the State's argument that defendant had no expectation of finality in his PTI diversion because our Court Rules provide that an indictment may be dismissed after serving a PTI term only with the prosecutor's consent, *R.* 3:28(c)(1), and that on the written recommendation of the program

director or the prosecutor a court may "order the prosecution of the defendant to proceed in the ordinary course." *R.* 3:28(c)(3).

Our Court Rules obviously did not contemplate this situation (successful completion of PTI while an appeal is pending), and just as obviously did not contemplate (in the ordinary case) that a defendant who has successfully completed PTI would still be subject to prosecution. We recommend that the Criminal Practice Committee review *Rule* 3:28 to avoid repetition of these circumstances. Perhaps the notice of appeal could be served on the criminal division manager as well as the defendant. In this case we are satisfied that defendant knew that his admission into PTI was provisional and contested. The colloquy between court and counsel seems to indicate that defendant was in the courtroom when the court made its oral ruling on PTI and said that it expected the State to appeal. Twelve days after the court signed an order admitting defendant into PTI, the State did appeal and served defendant's attorney with a copy of its notice of appeal.

Defendant's case is thus unlike *State v. Ryan,* 86 *N.J.* 1, 429 *A.*2d 332, *cert. denied,* 454 *U.S.* 880, 102 *S.Ct.* 363, 70 *L.Ed.*2d 190 (1981). In that case we held that once a defendant begins to serve a sentence for an offense, the sentence may not later be increased. *Id.,* 86 *N.J.* at 10, 429 *A.*2d 332. Ryan "had no reason to expect that his original sentence was not final at the time it was imposed and his imprisonment began." *Ibid.*

In *State v. Sanders, supra,* 107 *N.J.* at 621, 527 *A.*2d 442, we concluded that "the right of appeal [of a criminal sentence] provided by *N.J.S.A.* 2C:44–1f(2) does not violate the fifth amendment's double jeopardy clause, despite the fact that a defendant may remain incarcerated for up to ten days while the State perfects its appeal." We reasoned that "[t]he clear and unambiguous terms of the statute remove any expectation of finality that a defendant may vest in his sentence * * *." *Ibid.* In Nwobu's case, the trial court stated that an appeal was expected, and on August 18, 1994—thirteen days after the issuance of the Law Division's written opinion—the State did move for leave to appeal

that decision and gave notice of its motion to Nwobu's attorney. It is true that the State did not immediately seek a stay, but it is also true that the prosecutor was initially unaware that Nwobu entered PTI.

Any expectation by defendant that entering or completing PTI would, with finality, result in the dismissal of charges was unreasonable. The double jeopardy clauses of the United States Constitution and the New Jersey Constitution have not been violated. These same factors influence our judgment on whether principles of fundamental fairness now forbid prosecution of Nwobu. In *State v. Davis*, 244 *N.J.Super.* 180, 193, 581 *A.2d* 1333 (1990), the Appellate Division found that once the State formally agrees to permit a defendant to enter PTI, it may not simply reverse its decision because a different prosecutor has taken over the case. Nothing of that sort occurred here. Defendant always knew that the State sought to prosecute in this case. It is not fundamentally unfair that the appeal process has taken this course. Thus, we affirm the judgment of the Appellate Division.

## V

The single most important factor in these cases is that the defendants were charged with second-degree crimes. The defendants insist that the prosecutors have arbitrarily turned the degree of the crime into a *per se* rule against admission. The prosecutors insist that defendants have shown no "compelling reasons" for admission into PTI. Nwobu's case involves a rather sophisticated form of commercial fraud. Against that background, it is not surprising that the prosecutor found no "compelling reasons" for Nwobu's admission into PTI. There is nothing "idiosyncratic" about his background. The trial court was rather poorly served in the presentation of the matter, but there was no patent and gross abuse of discretion by the prosecutor.

The cases of Harris, Callender, and Overby are especially troublesome because defendants have made so much progress in their lives. At oral argument counsel for defendants urged that

their clients not be condemned to a life of failed employment opportunities because of their criminal records. Striking the proper balance between the retributive and rehabilitative functions of criminal law is very difficult. That decision "lies, in the first instance, with the prosecutor * * *." *State v. Kraft, supra,* 265 *N.J.Super.* at 111, 625 *A.*2d 579. As this case unfolds, the prosecutor is free to reconsider his decision. We are not free to substitute our judgment for his.

## VI

We reverse the judgment of the Appellate Division in *State v. Callender* that ordered defendants into PTI. We affirm the judgment of the Appellate Division in *State v. Nwobu* denying defendant's admission into PTI. We remand both cases to the Law Division for further proceedings.

*For affirmance and remandment*—Chief Justice WILENTZ, and Justices HANDLER, POLLOCK, O'HERN, GARIBALDI and STEIN—6.

Opposed—None.