# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3301-22

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

GEORGE DERUGIN,

    Defendant-Appellant.

_____

> Argued September 11, 2024 – Decided October 8, 2024
>
> Before Judges Marczyk and Torregrossa-O'Connor.
>
> On appeal from the Superior Court of New Jersey, Law Division, Bergen County, Indictment No. 16-06-0809.
>
> James H. Maynard argued the cause for appellant (Maynard Law Office, LLC, attorneys; James H. Maynard, on the briefs).
>
> Edward F. Ray, Assistant Prosecutor, argued the cause for respondent (Mark Musella, Bergen County Prosecutor, attorney; William P. Miller, Assistant Prosecutor, of counsel and on the brief; Catherine A. Foddai, Legal Assistant, on the brief).

PER CURIAM

Defendant, George Derugin, appeals from the Law Division's May 17, 2023 order denying without a hearing his petition for post-conviction relief (PCR), claiming his defense counsel was ineffective for failing to advise about or assist him in applying for the pretrial intervention program (PTI) before he pled guilty in 2016 to endangering the welfare of a child in distributing child pornography. After reviewing the record de novo in consideration of defendant's arguments, we affirm, but for reasons different than those expressed by the PCR judge.

I.

We glean the following facts and procedural history from the record.

A. The Offense, Plea, and Sentencing

In 2015, police arrested defendant, then age twenty-nine, for soliciting and receiving numerous sexual videos and photographs from a ten-year-old child depicting the child naked. In return, defendant sent the child sexual images of himself. The child's parents discovered their daughter's ongoing sexually explicit communications with defendant, a stranger to the family, on an application on the child's Kindle device.

Subsequently, defendant was indicted and charged with first-degree endangering the welfare of a child by manufacturing child pornography,

2

N.J.S.A. 2C:24-4(b)(3); second-degree endangering the welfare of a child by distributing child pornography, N.J.S.A. 2C:24-4(b)(5)(a)(i); second-degree sexual assault, N.J.S.A. 2C:14-2(b); and third-degree endangering the welfare of a child, N.J.S.A. 2C:24-4(a)(1). Defendant resided in California. He and his mother hired a New Jersey attorney to represent him regarding these offenses.

Defendant certified, as recommended by his counsel, that he underwent a psychological evaluation with Dr. Phillip Witt, Ph.D., and commenced sex offender treatment with the Sexually Offending Behaviors Recovery Program (SOBR) in California. Defendant also completed a "[t]wo-[w]eek bootcamp" to "develop a support network" with others receiving similar therapy and participated in Sex Addicts Anonymous. Defendant's mother maintained communication with defense counsel, and defendant met with counsel in person on four to five occasions and spoke by telephone on several occasions. Defendant and his mother both certify there was no discussion with defense counsel regarding the possibility of application or admission to PTI prior to defendant's plea.

Defense counsel provided the State evidence of the nature and extent of defendant's continued treatment efforts and other mitigating information during the plea negotiations. This included Dr. Witt's written evaluation revealing

3

"mixed findings." Dr. Witt characterized defendant as "an unusual man" with "little sense of direction," which, "combined with his emotional disengagement, suggest a relatively schizoid personality style." Although finding this "disengaged personality style and lack of drive in any area of his life have clearly impaired his functioning, sexually and otherwise," Dr. Witt found defendant's lack of social and emotional engagement was also "likely to prevent him from engaging in a contact sex offense." He recommended "relapse prevention training," "victim empathy exercises," and "individual psychotherapy."

SOBR's Director described defendant as having "responded very positively to therapeutic interventions" and recommended continued outpatient therapy. She recommended no incarceration, opining "[defendant] is not a pedophile." Her report reflects defendant's perception of his actions, including his statement that "[t]he [i]nternet is like a fantasy world, not real. I never had any plans to see or touch anyone."

Counsel's negotiations led the State to offer a plea avoiding the first-degree manufacturing charge and the second-degree sexual assault charge, which threatened sentences between ten and twenty years' and five to ten years' incarceration, respectively. Defendant recounts counsel ultimately recommended that he accept the State's plea offer, and defendant pled guilty in

4

2016 to second-degree endangering the welfare of a child by distribution of child pornography, N.J.S.A. 2C:24-4(b)(5)(a)(i), with the requirement of Megan's Law registration, N.J.S.A. 2C:7-1 to -23, and other mandatory assessments related to that offense. Critically, in exchange for defendant's plea, the State agreed to recommend a prison term in the third-degree range, although the State clarified it would seek the maximum five years.

At his plea hearing, defendant admitted that he knowingly distributed fewer than twenty-five images of child pornography over several weeks between July and August of 2015. Defendant also affirmed the voluntariness of his plea and his satisfaction with his defense counsel, which he further confirmed in his written plea form.

After his plea, but before sentencing, defendant's mother sent an email to counsel inquiring if a PTI application had been made on her son's behalf and if not, why counsel did not pursue this possibility. She recalled speaking to defense counsel's associate, who told her, "well you remember what the judge said."

Defense counsel submitted a sentencing memorandum containing character attestations and details of defendant's life and treatment, which was recognized for its quality by both the sentencing court and the prosecutor. The

submission contained the evaluation by Dr. Witt and therapeutic reports and letters from treatment providers. In those materials, defendant admitted to exchanging sexually explicit videos and photographs with the ten-year-old child, including videos of the child performing sexual acts and depicting defendant engaged in such conduct.

At the sentencing hearing in 2017, the State emphasized the serious nature of the offense. The prosecutor specifically described evidence showing defendant communicated with the child for approximately a month using "multiple screen names" and several internet services, "including one that provided live video." He highlighted that "this was not . . . a one-time transaction between a [thirty]-year-old man and a ten-year-old girl . . . [but] a pattern of conduct . . . ."

The victim's mother described her anguish that her child was "stripped of her innocence through deplorable actions of another." She made clear that "[j]ustice may have been served in the eyes of the law, but not through [hers]." The prosecutor urged the public import of imposing a substantial term of incarceration for defendant and the danger this conduct poses to children in the internet age.

A-3301-22

The sentencing court considered defendant's mitigating information and acknowledged that the "plea agreement was the product of . . . some lengthy and intense negotiations between his attorney and the State." Describing the circumstances as "horrendous and despicable," the court noted defendant sent the child pornographic videos including a video of himself masturbating. The court characterized the sexual communications and images as "every parent's nightmare." The court credited defendant's proactive therapy efforts as not something it "normally see[s]," but observed, "what I'm dealing with here is an individual who otherwise was leading a double life with a deep, dark, disgusting secret, quite frankly, unbeknownst to these family and friends who have put their good name to paper in support of him." The court was "not swayed by [defendant's] tears in court," finding them more about his "dark secret" being uncovered.

The court raised concern that defendant's previous form of self-support was professional poker playing, noting, "[i]t gives me a little bit of a window into [defendant's] life. . . . Professional poker player, gambler, gambling with his life and, most importantly here, gambling with the health and welfare of a vulnerable child." The court found future risk of re-offense existed and addressed defendant, "[y]ou obviously have deep-seated mental health issues

7

that need to be addressed, not only for your sake, but more importantly for the . . . protection of the public and any other children [who] might ever cross paths with you."

The court accordingly found aggravating factors three, the risk of another offense, N.J.S.A. 2C:44-1(a)(3), and nine, the need for deterring the defendant and others from violating the law, N.J.S.A. 2C:44-1(a)(9), outweighed the singular mitigating factor seven, defendant's lack of prior criminal history, N.J.S.A. 2C:44-1(b)(7). Emphasizing its view that defendant's mitigating information did not support the lowest sentence, the court instead imposed four years' imprisonment, subject to Megan's law, mandatory financial assessments, and no contact with the victim.

Defendant did not appeal the conviction or sentence.

B.    The PCR Petition and Hearing

In January 2022, defendant filed his PCR petition based solely on defense counsel's failure to advise him of his ability to apply for admission to PTI. He claimed his counsel's deficient performance was prejudicial as he would have applied for PTI and would have exhausted all appeals if denied. He asserted that his rehabilitative efforts and lack of prior history placed him in a favorable position for PTI. Defendant submitted his own certification and that of his

mother, as well as mitigating information, including the evaluations and treatment records provided to both the State and the sentencing court.

The specific prosecutor who handled defendant's investigation, prosecution, plea negotiations and hearing, and sentencing proceeding opposed the petition. He explained that he considered this case "one of the more serious" in his experience and offered his first-hand knowledge that "the State would have never agreed . . . [to PTI]." The prosecutor represented he would not have "agreed to PTI for an individual [who] asked a [ten]-year-old girl to take pictures of her vagina and breasts." He emphasized that defense counsel effectively advocated for defendant and provided the State with the same information relied upon in a PCR application. The prosecutor clarified that this information, coupled with the desire to spare the child from testifying at trial, led to the State's final plea offer from which the State would never have departed.

The prosecutor represented that the victim's family was very involved throughout the process and would not have foregone prosecution of the matter. Further, the prosecutor found defendant's statement "outrageous" that the State might have agreed to any resolution that circumvented Megan's Law sex offender registration or legislatively mandated incarceration. The State contended defendant was not prejudiced because "that PTI application would

have never, ever, ever been granted.  Ever."  The prosecutor assured that its position was not a categorical denial, but one specific to the facts of defendant's case and personal characteristics.

The PCR judge issued a written decision denying the application and the request for an evidentiary hearing.  In reaching its decision, the judge recounted the serious nature of the offense, the specific findings and concerns of the sentencing court, and defense counsel's securing a favorable plea agreement and sentence following months of plea negotiations.

Applying the standards of Strickland v. Washington, 466 U.S. 668 (1984) (setting forth the two-pronged showing for ineffective assistance of counsel requiring both deficient performance and prejudice), the PCR judge denied the petition based on the first prong, finding that defense counsel was not deficient. Because defendant faced prosecution of first- and second-degree crimes involving his exchanging graphic sexual images with a ten-year-old child, the PCR judge credited the trial prosecutor's representation that it would have opposed a PTI application.  The judge also cited to Rule 3:28-1, not in effect at the time of defendant's pre-trial proceedings, that requires the prosecutor's "consent" to apply for PTI when a defendant faces charges of the first- or second-degree.  Finding counsel was not deficient, the judge did not conduct a

prejudice analysis under <u>Strickland</u>'s second prong. The judge denied an evidentiary hearing, finding defendant's "merely speculative assertions" did not warrant a hearing.

## II.

Defendant appeals, raising the following arguments:

POINT I

THE TRIAL COURT FAILED TO PROPERLY ANALYZE [DEFENDANT]'S INEFFECTIVE ASSISTANCE CLAIM UNDER THE FIRST PRONG OF <u>STRICKLAND V. WASHINGTON</u>.

A. The Lower Court Conflated (and Confused) the Analysis of the Prejudice and Performance Prongs of <u>Strickland</u>, by Finding that [Defendant]'s Former Trial Counsel's Performance was Not Deficient Because Former Counsel Obtained a Favorable Plea Offer and Sentence.

B. The Court Below Incorrectly Cited to a PTI Court Rule that was Not Legally in Effect When [Defendant] Would Have Applied for PTI.

C. [Defendant]'s Former Trial Counsel Failed to Properly Advise Him About His Eligibility to Apply for PTI, Which Was Based Upon His Misunderstanding about the PTI Process, as Evidenced by His Communications with [Defendant]'s Mother.

11

POINT II

THE LOWER COURT'S FLAWED ANALYSIS OF THE FIRST STRICKLAND PRONG LED TO ITS DETERMINAT[I]ON THAT IT DID NOT NEED TO ASSESS THE SECOND STRICKLAND PRONG; HOWEVER, SINCE [DEFENDANT]'S FORMER ATTORNEY FAILED TO PROPERLY ADVISE HIM OF AN IMPORTANT STATUTORY RIGHT, THE SECOND PRONG ("PREJUDICE") IS SATISFIED.

POINT III

THE TRIAL COURT'S REFUSAL TO GRANT [DEFENDANT] AN EVIDENTIARY HEARING WAS A CLEAR ERROR OF LAW, AS [DEFENDANT]'S CERTIFICATION ESTABLISHED RELEVANT AND MATERIAL FACTS IN DISPUTE REQUIRING RESOLUTION VIA AN EVIDENTIARY HEARING.

Defendant contends the PCR judge erred in denying his PCR petition, or at a minimum, his request for an evidentiary hearing. He argues that defense counsel's performance was deficient for failing to advise him of his ability to apply for PTI, and the judge's reliance on counsel's performance in plea negotiations and at sentencing was improper and "wholly irrelevant." Further, he argues that the prejudice flows directly from being denied the opportunity to apply for PTI and, if unsuccessful, to appeal his rejection. He asserts that to show prejudice he need not establish a reasonable probability that he would have

12

been admitted to PTI and need only show the reasonable probability that he would have applied, which he claims he demonstrated by certifying he would have done both.[1]  Defendant also urges that the PCR judge erred by relying on language in Rule 3:28-1 requiring prosecutorial consent, as it was adopted after his conviction, and by disregarding the import of his mitigating information in denying his petition or, at a minimum, his request for an evidentiary hearing.

The State counters that counsel was not deficient, and defendant cannot establish the reasonable probability that the outcome would have been different had he been advised and applied for PTI.

Defendant does not seek to have his plea and conviction vacated.  Instead, he requests that this court remand for an evidentiary hearing to determine what, if anything, defense counsel advised regarding PTI.  Defendant further seeks a prospective order allowing him, if successful at the hearing, to apply for PTI and appeal any rejection.  He asks this court to vacate the plea and conviction, but "only upon a determination by the [p]rosecutor or the [c]ourt that [defendant] should be admitted to PTI."

---

[1] Defendant's appellate counsel further claimed at oral argument that defendant would have applied and exhausted appeals even if that resulted in the State's withdrawing its plea offer, although defendant did not certify to that representation.

III.

We review the legal conclusions of a PCR court de novo.  See State v. Harris, 181 N.J. 391, 419 (2004).  In the absence of an evidentiary hearing, as here, we may review without deference "both the factual findings and legal conclusions of the PCR court."  Id. at 421.  To prevail on a PCR application, the defendant must show by a preponderance of the evidence that he is entitled to relief.  See State v. Preciose, 129 N.J. 451, 459 (1992).  To sustain that burden, the defendant must allege and articulate specific facts that "provide the court with an adequate basis on which to rest its decision."  State v. Mitchell, 126 N.J. 565, 579 (1992).

New Jersey's PCR petition serves as an "analogue to the federal writ of habeas corpus."  Preciose, 129 N.J. at 459.  "[N]either a substitute for direct appeal" for those criminally convicted, nor a vehicle to re-litigate matters already resolved on their merits, PCR proceedings can offer the best opportunity for ineffective assistance claims to be reviewed.  Id. at 459-60.

The United States Supreme Court in Strickland, 466 U.S. at 687, established a two-part test to determine whether a defendant has been deprived of the effective assistance of counsel, which the New Jersey Supreme Court adopted in State v. Fritz, 105 N.J. 42, 58 (1987).  Failure to establish either prong

requires the denial of a PCR petition founded on an ineffective assistance of counsel claim. See Strickland, 466 U.S. at 700. To satisfy the first prong, a defendant must demonstrate counsel's performance was deficient and "fell below an objective standard of reasonableness" and "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Id. at 687-88. Defendants "must allege specific facts and evidence supporting [their] allegations." State v. Porter, 216 N.J. 343, 355 (2013). "Bald assertions" will not suffice. State v. Cummings, 321 N.J. Super. 154, 170 (App. Div. 1999). Further, reviewing courts "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance," and "the defendant must overcome the presumption that, under the circumstances, the challenged action [by counsel] 'might be considered sound trial strategy.'" Strickland, 466 U.S. at 689 (quoting Michel v. Louisiana, 350 U.S. 91, 101 (1955)).

Under Strickland's second prong, a defendant must "affirmatively prove" "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." State v. Gideon, 244 N.J. 538, 551 (2021) (quoting Strickland, 466 U.S. at 694). To show sufficient prejudice when a conviction results from a guilty plea, a defendant must show a

"'reasonable probability that, but for counsel's errors, [the defendant] would not have pled guilty and would have insisted on going to trial,'" State v. Nuñez-Valdéz, 200 N.J. 129, 142 (2009) (alteration in original) (quoting State v. DiFrisco, 137 N.J. 434, 457 (1994)); see also State v. Gaitan, 209 N.J. 339, 351 (2012), and that "a decision to reject the plea bargain would have been rational under the circumstances." Padilla v. Kentucky, 559 U.S. 356, 372 (2010); see also Missouri v. Frye, 566 U.S. 134, 147 (2012) (finding as to prejudice that "it is necessary to show a reasonable probability that the end result of the criminal process would have been more favorable by reason of a plea to a lesser charge or a sentence of less prison time."). An evidentiary hearing need not be granted simply upon request for PCR, see Cummings, 321 N.J. Super. at 170; however, a hearing may be warranted if a defendant demonstrates its necessity to develop a sufficient factual record. See Preciose, 129 N.J. at 462.

As defendant's petition centered exclusively on counsel's alleged failure to advise of his eligibility for PTI, we begin by recognizing the program provides "an alternative procedure to the traditional process of prosecuting criminal defendants . . . through which certain offenders [may] avoid criminal prosecution by receiving early rehabilitative services expected to deter future criminal behavior." State v. Nwobu, 139 N.J. 236, 240 (1995). Subject to

16

certain exclusions and presumptive rejections, PTI is available to all defendants deemed suitable for admission. See State v. Gomes, 253 N.J. 6, 20 (2023). "[A] decision as to whether to admit a particular defendant into PTI has been treated as a fundamental prosecutorial function." Id. at 18 (citing State v. Leonardis, 71 N.J. 85, 121 (1976)). Courts may not usurp a prosecutor's judgment in this arena absent a "'patent and gross abuse of discretion.'" Ibid. (quoting Nwobu, 139 N.J. at 246-47).

We review the PTI framework in existence at the time of defendant's pre-trial proceedings. Specifically, "[u]ntil 2018, the assessment of a defendant's suitability for PTI was based on factors set out in both N.J.S.A. 2C:43-12(e) and Rule 3:28." Id. at 17 (citing State v. Johnson, 238 N.J. 119, 128 (2019)). Significantly, at times relevant to this appeal, pursuant to then-Rule 3:28, Guideline 3(i), and the Official Comment, a rebuttable presumption existed against admission for first- and second-degree offenses, providing that applicants charged with such offenses should ordinarily be rejected unless the prosecutor affirmatively joined in the application. Amended in 2018 to replace the prior Guidelines, Rule 3:28 now expressly requires prosecutorial consent before such defendants may even apply. See R. 3:28-1(d)(1). Although the PCR

court cited to the current rule, defendant overstates the significance of the rule's amendment.

Importantly, the post-2018 version of Rule 3:28-1 essentially "codifie[d] past practice [now] making clear that persons charged with crimes for which there is a presumption of incarceration . . . may not have their applications considered without prosecutor consent." Pressler & Verniero, Current N.J. Court Rules, cmt. on R. 3:28-1(d) (2025). The presumption set forth in prior Guideline 3(i) was itself formidable and rebuttable only upon a defendant's showing of "something extraordinary or unusual" of an "idiosyncratic" nature commensurate with the sentencing showing necessary to overcome the presumption of incarceration. Nwobu, 139 N.J. at 252 (emphasizing that the defendant's second-degree charge was "the single most important factor" in overcoming the presumption against PTI, and the defendant must establish "compelling reasons" for admission into PTI). Thus, defendant faced this significant hurdle of overcoming presumptive rejection and legislatively mandated incarceration for these very serious first- and second-degree offenses even before the rule's amendment.

## IV.

Against this backdrop, we consider and reject defendant's claims, after affording defendant the favorable inferences to which he is entitled. See R. 3:22-10(b). Having reviewed the extensive record presented by defendant in support of his petition and the State's opposition, we need not remand for an evidentiary hearing. We will accept for purposes of argument that defense counsel never advised defendant of his eligibility and right to apply to PTI and that defendant would have applied had he known about the program. We further accept that in furtherance of that application defendant would have emphasized his personal information and mitigating sex-offender treatment efforts and vigorously appealed any rejection by the prosecutor.

We need not determine whether counsel's performance here was deficient, because, even assuming it was, we are satisfied that defendant did not demonstrate any deficiency was prejudicial to him as required under Strickland's second prong. See Gaitan, 209 N.J. at 350 (recognizing that "[a]lthough a demonstration of prejudice constitutes the second part of the Strickland analysis, courts are permitted leeway to choose to examine first whether a defendant has been prejudiced." (citing Strickland, 466 U.S. at 697)).

19

It was not sufficient for defendant to merely claim he would have applied to PTI to show prejudice. He must also show the reasonable probability that he would have been admitted to PTI had he applied. See State v. L.G.-M., 462 N.J. Super. 357, 369-70 (App. Div. 2020) (remanding for PCR hearing based on showing of counsel's flawed immigration advice and expressly directing the PCR court to determine "the probability of defendant's admission into the PTI program" had he applied and the resulting impact on the probability of deportation).

Further, the record is clear regarding the improbability of PTI admission. The prosecutor who was involved at all stages of this case represented the State would never have joined in the application or admitted defendant into PTI. Guideline 3(i) presented a weighty obstacle for defendant that he has not shown he was likely to overcome. Citing with particularity the State's consideration of PTI factors, including the serious nature of this offense, the great public interest in formal prosecution of defendant and adherence to legislatively presumed incarceration and application of Megan's Law, the victim's strong interest in securing a conviction and opposition even to the favorable recommended sentence, defendant's therapeutic efforts and lack of a prior record, and the State's concerns engendered by information and conclusions in defendant's own

expert submissions, the prosecutor unequivocally maintained that in the State's discretion diversion was never an option. The prosecutor assured he would not have categorically rejected defendant's admission, but instead specifically rejected this defendant based on the particularized facts and circumstances.

We recognize that the prosecutor's virtually certain rejection would have been subject to narrow appeal for abuse of discretion, but defendant has likewise failed to show a reasonable probability of success on appeal to either the trial court or this court. Given the extraordinary deference accorded to the prosecutor's decision, the record provides no support, even prima facie, for such a contention. The sentencing court's findings, declining to reduce the prison term to the lower end of the sentencing range, are generally emblematic of judicial evaluation of defendant's mitigating information. We also note that, to exhaust PTI appeals, defendant would have risked losing a plea offer to a prison term in the third-degree range, when he faced up to twenty years' incarceration on the first-degree charge and possible consecutive sentencing on the second-degree sexual assault.

Our independent review of the record taken in the light most favorable to defendant readily undermines his claims regarding the probable outcome had he known about the PTI program and applied. Defendant's insistence that this case

did not involve "contact" with the child victim, and reliance on the expert opinions that he is unlikely to commit a sexual offense involving actual physical contact, ignore the prosecutor's reasonable view of the magnitude and impact of his sexually explicit electronic contact and communication, continuous over a period of time, with a ten-year-old child. Defendant caused the child to film herself in sexually explicit acts, transmit those images to defendant, and view sexually graphic images of defendant, nearly twenty years her senior. While defendant characterized his conduct as pure virtual "fantasy," the prosecutor's recognition of the real and harmful impact of that conduct on a specific child was not likely to be deemed arbitrary.

Although defendant's therapeutic efforts were certainly positive, he ignores the concerning aspects of those reports and this offense that the prosecutor assured would have caused the State to reject his application, and which made successful appeal of the PTI rejection, shrouded in deference, improbable. To find prejudice would require speculation regarding an unlikely outcome.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

22