STATE OF NEW JERSEY, PLAINTIFF-APPELLANT, v. JON MADDOCKS, DEFENDANT-RESPONDENT.

Argued January 23, 1979—Decided May 24, 1979.

*Mr. Leo P. Cox,* Assistant Prosecutor, argued the cause for appellant (*Mr. Clinton E. Cronin,* Acting Monmouth County Prosecutor, attorney).

*Mr. Alan J. Nodes,* Deputy Attorney General, argued the cause for amicus curiae Attorney General of New Jersey (*Mr. John J. Degnan,* Attorney General of New Jersey, attorney; *Mr. Nodes, Mr. John DeCicco,* Deputy Attorney General, and *Mr. Edwin H. Stern,* Deputy Attorney General, of counsel).

*Mr. William W. Graham* argued the cause for respondent (*Messrs. Mirne, Nowels, Tumen, Wooley, Magee, Kirschner and Graham,* attorneys).

The opinion of the court was delivered by

PASHMAN, J. As in *State v. Bender,* 80 *N. J.* 84 (1979), decided this day, this case requires us to pass upon the propriety of a prosecutorial decision rejecting a defendant's application for enrollment into a county Pretrial Intervention Program. That is, we must decide whether the defendant here involved has "clearly and convincingly" established that the prosecutor's veto constituted "a patent and gross

abuse of his discretion." *State v. Leonardis,* 73 *N. J.* 360, 382 (1977) (*Leonardis II*).

At the time of the incident to be described below, defendant was 18 years of age. He is presently employed at a full-time job and is living at home with his parents. His high school transcript indicates that he voluntarily withdrew from school immediately prior to his scheduled graduation. Aside from the event here at issue, he has no criminal record whatsoever.

On September 21, 1977, defendant was charged with breaking and entering with intent to steal. *N. J. S. A.* 2A:94–1. Specifically, the State alleged that during the early morning hours of June 20, 1977, defendant forcibly entered a luncheonette located on the Belmar Boardwalk and absconded with eleven packs of cigarettes, two bags of popcorn, one candy bar, and $3.00 in cash — items whose total value equalled less than $10.00. Defendant was found on the nearby Belmar beach in an intoxicated condition only moments after the alleged crime had been committed. According to the police, a second individual who escaped apprehension was observed in the vicinity.

On November 9, 1977, defendant applied for admission to the Monmouth County Pretrial Intervention Program. After reviewing defendant's file, the program director, on December 12, 1977, recommended that his admission be approved. Noting defendant's possible "alcohol problem," the director advised that in lieu of prosecution defendant should be evaluated at the Jersey Shore Mental Health Clinic and required to undergo the treatment procedures there prescribed. He also recommended that in light of defendant's failure to obtain a high school diploma, he attend the Asbury Park Learning Center to complete his education.

The program director's recommendation notwithstanding, on December 30, 1977 the prosecutor notified defendant that the State would not consent to his admission into PTI. The reasons advanced in support of this rejection were:

1. [Defendant possesses an] attitude not conducive to PTI because [he] refused to cooperate with law enforcement officials by naming his companion in the breaking and entering.

2. A desire by the Belmar Police that a record of defendant's criminal involvement be kept because they felt he was on the periphery of other criminal investigations.

Later, at the hearing challenging the prosecutorial veto, a third reason was added — the serious nature of the crime with which defendant was charged.

On January 13, 1978, defendant moved in the Superior Court that he be enrolled in PTI over the objections of the prosecutor. In addition to reciting the information sketched above, defendant's attorney produced a letter signed by the Alcohol Counselor at the Community Health Center where defendant had already begun voluntary treatment. While generally emphasizing defendant's good prospects for rehabilitation, the letter noted that defendant "evidence[d] the initial signs of" a genuine alcohol abuse problem. Defendant also made clear at the hearing that on the advice of counsel he had informed the prosecutor that he would not identify his alleged accomplice unless and until he was guaranteed admission to PTI. Indeed, defendant's counsel noted that the name would be immediately disclosed should the prosecutor consent to his diversion.

After reviewing the materials submitted, the trial judge concluded that defendant had failed to "carry the heavy burden of showing clearly and convincingly compelling reasons justifying admission" and hence refused to overturn the prosecutor's decision. The Appellate Division, one judge dissenting, reversed and ordered that defendant be enrolled. *State v. Maddocks,* 160 *N. J. Super.* 490 (App. Div. 1978). The appellate majority concluded that defendant's refusal to divulge his accomplice's identity until assured PTI admission was a "reasonable" position which should not have affected his eligibility. It also ruled that the second reason underlying the prosecutor's rejection constituted a form of "guilt by association" and should not have played a role in

the decision-making process. Characterizing defendant's crime as mere "youthful folly," it ordered defendant's admission into PTI on the condition that he "live up to his promise to furnish the name of his accomplice and cooperate with the authorities." *Id.* at 494. We granted the State's motion for leave to appeal.

## I

Before reaching the merits of the present case, we must address a preliminary question concerning the scope of appellate review of a trial court's decision affirming a prosecutor's rejection of a defendant from enrollment in PTI. As *Leonardis II* makes clear, a defendant wishing to overcome such a prosecutorial veto must "clearly and convincingly" demonstrate that the veto constituted a "patent and gross abuse of . . . discretion." 73 *N. J.* at 382. Where, as here, the trial court has concluded that this "heavy burden" has not been satisfied, an appellate tribunal should be even more reluctant to overrule the prosecutorial determination.

In *State v. Bender, supra,* we noted that ordinarily an abuse of discretion will be manifest if the prosecutor's decision

(a) was not premised upon a consideration of all relevant factors, (b) was based upon a consideration of irrelevant or inappropriate factors, or (c) amounted to a clear error in judgment.

[80 *N. J.* at 93]

We also noted that in order for such an abuse of discretion to rise to the level of "patent and gross," it must further be shown that the prosecutorial error complained of "will clearly subvert the goals underlying Pretrial Intervention." *Id.* at 93.

Issues concerning the propriety of the prosecutor's consideration of a particular factor are akin to "questions of law"; their resolution merely requires a determination as to whether that factor was legally cognizable given the underly-

ing policies of PTI. Consequently, on such matters an appellate court is free to substitute its independent judgment for that of the trial court or the prosecutor should it deem either to have been in error. This is not to suggest that an appellate or trial court should ignore the insights offered by the prosecutor as to the relevance of particular factors to the proper functioning of PTI. We merely wish to emphasize that, in the final analysis, definitive interpretations of the Guidelines are matters entrusted to the judicial branch.

Questions concerning the existence of a "clear error in judgment," however, are primarily subjective in nature. Their resolution requires a weighing and balancing of all aspects of the defendant's background and the circumstances surrounding his perpetration of the crime. As such, decisions in this regard are in large measure dependent upon the "feel of the case" which the trial judge has gained through first-hand contact with the prosecutor and defendant involved in a particular case. Consequently, in situations in which the trial judge has determined that the prosecutorial decision does not constitute a "clear error in judgment," an appellate tribunal should be even more hesitant to upset that determination than if it was hearing the case as an initial matter. Thus, in this respect, the scope of appellate review is more circumscribed than that exercisable by the trial court.

II

As we emphasized in *State v. Bender,* the determination as to whether a prosecutorial decision constitutes a "gross and patent abuse of discretion" must begin with a scrutiny of the factors upon which the prosecutor based his decision. 80 *N. J.* at 94. In the present case, three reasons were given for the State's refusal to consent to enrollment: (1) defendant failed to identify his accomplice; (2) defendant was on the "periphery" of other criminal investigations; and (3) defendant's crime was serious in nature. The propriety

of the prosecutor's consideration of each of these factors will be discussed in turn.

Defendant contends that his refusal to name his accomplice until guaranteed placement in PTI should not have affected his eligibility for the program. In support of this position, he points to the language of Guideline 4, which provides:

Enrollment in PTI programs should be conditioned upon neither informal admission nor entry of a plea of guilt. Enrollment of defendants who maintain their innocence should be permitted unless the defendant's attitude would render pretrial intervention ineffective.

Defendant maintains that conditioning PTI enrollment upon the identification of an alleged accomplice is similar in nature to a requirement that guilt be admitted, and hence should be irrelevant to a prosecutorial determination concerning diversion.

Defendant wholly misconceives the thrust of Guideline 4. As the language of the Guideline makes clear, prosecutors are forewarned not to *condition* PTI enrollment upon admissions of guilt. That is, a prosecutor cannot deny consent to enrollment to a particular individual simply because that individual has elected not to tender self-incriminatory information. As the comments to the Guidelines state, "bar[ring] participation [in PTI] solely on such grounds would be an unwarranted discrimination."

This is not to say, however, that in any particular case a prosecutor may not take into consideration the fact that a specific defendant has refused to admit his guilt. In certain circumstances, a voluntary proffering of self-incriminatory information may indicate defendant's degree of repentance for the crime he has committed, and hence bear upon his "amenability to correction" and potential "responsiveness to rehabilitation." *See Gilhaus Beverage Co. v. Lerner,* 78 *N. J.* 499, 527 (1979) (Pashman, J., concurring and dissenting). Indeed, Guideline 4 explicitly notes that failure to admit guilt may be considered if "defendant's

attitude would render pretrial intervention ineffective." Thus, although a prosecutor may not condition PTI entrance upon an admission of guilt, a failure to so admit, if relevant to defendant's "amenability to correction," may be weighed along with all other factors dealing with the nature of the crime and the character of the accused.

 In the present case, the prosecutor did not reject defendant's application simply because defendant elected not to disclose his accomplice's identity. Rather, the prosecutor deemed the defendant's failure to cooperate with law enforcement authorities, along with all other relevant factors, as indicating that defendant would not "be amenable to the rehabilitation facilities that we have in the pretrial intervention program." As such, he properly took this factor into account in the decision-making process.

The second reason advanced by the prosecutor in rejecting defendant's admission was that the Belmar police felt that defendant was on the "periphery" of other criminal investigations. At the hearing below, defendant contended that this reason was merely the product of the Belmar police's suspicion that he "was . . . running in [a] particular group" of individuals believed to be involved in "drug activity," and hence consideration of this factor was akin to a finding of "guilt by association."

 Again, we disagree with defendant's contentions. In *Leonardis II*, we emphasized that the decision to divert an accused into PTI is primarily entrusted to the sound discretion of the prosecutor. In making his determination, the prosecutor is not required to prove "beyond a reasonable doubt" that a particular factor is present before taking it into account in the decision-making process. Rather, it is sufficient that the prosecutor has a reasonable belief, grounded in reliable information, that certain aspects of defendant's background will adversely affect the chances of rehabilitation should PTI enrollment be granted. *See State v. Litton*, 155 *N. J. Super.* 207, 214–215 (App. Div. 1977).

Of course, should a defendant demonstrate that the prosecutor's belief is unfounded or based upon unreliable information, it would be inappropriate for this belief to affect defendant's admissibility. Absent such a showing, however, such factors can properly be taken into account.

Such a state of affairs in no way amounts to a finding of "guilt by association." Defendant is not being convicted of a crime merely because the prosecutor reasonably believes that he is on the periphery of other criminal activities. At most, he may be denied entrance into a PTI program because this factor, among others, reflects adversely upon his "amenability to correction" and potential "responsiveness to rehabilitation."

■ The third reason advanced by the prosecutor for rejection was that the crime with which defendant was charged, being classified as high misdemeanor, is serious in nature. The Guidelines and our case law make clear that the nature of the crime charged is an appropriate factor to be weighed by the prosecutor en route to his decision. *See Leonardis II*, 73 *N. J.* at 382; *State v. Bender, supra,* 80 *N. J.* at 84; Guidelines, Introduction and Guideline 3. Hence, this factor could properly have been taken into account.

■ Thus, the types of factors upon which the prosecutor's decision in this case was premised all constitute the types of factors that may be appropriately considered in the decision-making process. However, for the reasons to be given below, we are nevertheless of the opinion that an outright reversal of the Appellate Division decision might well constitute an unfair disposition of the present case.

Defendant's refusal to identify his accomplice was taken on advice of counsel. Given the unsettled state of the law at the time of this decision, we feel that defendant could reasonably have believed that failure to divulge this information would not affect his PTI eligibility. In addition, his avowal to disclose this information if guaranteed admission

to PTI evidences his willingness to cooperate with law enforcement officials. Had he the benefit of today's opinion by this Court, we feel a sufficiently strong possibility exists that this information would have been communicated to the prosecutor.

Second, one of the prosecutor's bases for rejection — that defendant was on the "periphery" of other criminal investigations — was impermissibly vague in nature. As noted above, reasonably grounded beliefs can be taken into account in the decision-making process. However, notions of fundamental fairness dictate that the prosecutor's allegations be stated with sufficient specificity so that defendant has a meaningful opportunity to demonstrate that they are unfounded. Indeed, absent some indication of the underlying basis of the prosecutor's belief, a trial court will be unable to review that determination. *See Leonardis I, supra,* 71 *N. J.* at 114; *State v. Atley,* 157 *N. J. Super.* 157, 162–163 (App. Div. 1978).

This is not to say that the prosecutor must publicly reveal details surrounding ongoing criminal investigations where such disclosures might jeopardize the success of those investigations or the safety of law enforcement officials. *See Leonardis I, supra,* 71 *N. J.* at 119. However, at the least, the prosecutor is required to reveal in some way the nature of the activities in which defendant is allegedly involved and the reliability of his sources of information.

Consequently, as in *State v. Bender,* we feel that the wiser course is for us to remand this matter. Such a remand will provide defendant with the opportunity to reconsider his decision not to reveal his accomplice's identity in light of our ruling today. It will also allow the prosecutor to specify in greater detail the types of criminal activities in which defendant is believed to be involved, thus giving defendant a meaningful opportunity to rebut those charges. Finally, should defendant reveal his companion's identity and thereby remove one of the State's reasons for rejection, the prosecutor

will be able to reassess his original position, especially that relating to the purported "seriousness" of the crime with which defendant is charged.

Accordingly, the judgment of the Appellate Division is reversed, and this case remanded for further proceedings consistent with this opinion.

*For reversal and remandment*—Chief Justice HUGHES and Justices MOUNTAIN, JACOBS, PASHMAN, CLIFFORD, SCHREIBER and HANDLER—7.