STATE OF NEW JERSEY, PLAINTIFF v. JOSEPH CUCINOTTA, DEFENDANT.

STATE OF NEW JERSEY, PLAINTIFF v. FRANK GRUNGO, DEFENDANT.

STATE OF NEW JERSEY, PLAINTIFF v. RICHARD GRUNGO, DEFENDANT.

STATE OF NEW JERSEY, PLAINTIFF v. ROBERT A. CALHOUN, DEFENDANT.

Superior Court of New Jersey
Law Division (Criminal)
Burlington County

Decided September 17, 1984.

*Barry J. Hockfield* for defendant Joseph Cucinotta (*Barry J. Hockfield,* P.A.).

*Robert P. Weishoff* for defendant Frank E. Grungo (*Mathews, Sitzler, Weishoff & Sitzler,* attorneys).

*Robert L. Sloan* for defendant Richard Grungo (*James Logan, Jr.* attorney).

*John L. Call,* Jr. for defendant *Robert A. Calhoun.*

*Robert N. Agre,* Dep. Atty. Gen., for State (*Irwin I. Kimmelman,* Atty. Gen. of N.J., attorney).

HAINES, A.J.S.C.

The four defendants in this matter have been indicted for various offenses relating to the disposition of hazardous waste and for conspiracy. Second degree crimes are involved. The PTI Director and the Attorney General, in accordance with their interpretation of Guideline 3(i) to *R.*3:28 and past practice, therefore refused to accept PTI applications offered by all of the defendants. That Guideline provides:

> Assessment of the Nature of the Offense: Any defendant charged with crime is eligible for enrollment in a PTI program, but the nature of the offense is a factor to be considered in reviewing the application. If the crime was (1) part of organized criminal activity; or (2) part of a continuing criminal business or enterprise; or (3) deliberately committed with violence or threat of violence against another person; or (4) a breach of the public trust where admission to a PTI program would deprecate the seriousness of defendant's crime, the defendant's application should generally be rejected. A defendant charged with a first or second degree offense or sale or dispensing of Schedule I or II narcotic drugs as defined in *L.* 1970, *c.* 226 (*N.J.S.A.* 24:21-1 *et seq.*) by persons not drug dependent, should ordinarily not be considered for enrollment in a PTI program except on joint application by the defendant and the prosecutor. However, in such cases, the applicant shall have the opportunity to present to the program director, and through him to the prosecutor, any facts or materials demonstrating his amenability to the rehabilitative process, showing compelling reasons justifying his admission and establishing that a decision against enrollment would be arbitrary and unreasonable.[1]

This language invites the filing of applications, not the opposite. Unless an application has been filed there can be no opportunity for an "applicant" to advance "compelling reasons" justifying admission to the program. These conclusions resulted in an order of this court requiring the acceptance of applications and the consideration of any "compelling reasons" advanced by the defendants.

---

[1]The comments to this Guideline contains language that supports the refusal to accept applications. It cannot be so read, however, because it would then contradict the language and intent of the Guideline itself.

Applications were then filed by all defendants and all were rejected for the same reasons, namely:

In your case, the Prosecutor did refuse to join affirmatively in the filing of your application and I do not feel that you have given compelling reasons to justify your admission into the Program; therefore, your application must be rejected. In addition to the above, there are other reasons why your application must be rejected. The charges against you indicate that the crimes were a part of organized criminal activity and also part of a continuing criminal business or enterprise. Both of these categories of offenses are normally excluded from Pretrial Intervention enrollment. The need to protect society from such activities indicates that the need to prosecute far outweighs the benefits you would derive through diversion.

All rejections were appealed to this Court.

The Attorney General did not provide any reasons for his refusal to consent to admission until the defendants had appealed their denials. At that point, he merely adopted the reasons set forth by the Director while advancing independent arguments in support of his position. He contends that there is a rebuttable presumption against admission because the defendants are charged with second degree crimes, that great deference must be given to the Director's determination, which is not to be set aside absent the showing of a "patent and gross abuse of discretion," that the defendants were involved in a "continuing criminal enterprise," and that the seriousness of the crimes charged support the denial.

The record before this court consists of the following:

A. *Joseph Cucinotta*

1. The Director's letter of denial.

2. A letter-brief from counsel arguing that the Director "abused his discretion" because he made only a "general statement" that the defendant was not entitled to admission based upon his involvement in on-going criminal activity.

3. The Attorney General's letter brief outline above.

B. *Frank E. Grungo*

1. The Director's letter of denial.

2. A letter-brief from counsel arguing that the rejection was arbitrary because of the failure by the Director to list mitigating factors favorable to the defendant as well as his failure to indicate what factors might be adequate for diversion.

3. The Attorney General's letter-brief outlined above.

C. *Richard Grungo*

 1. The Director's letter of denial.

 2. The letter-brief from counsel arguing that the Director's letter of rejection "contains nothing more than conclusory recitations of the pretrial intervention guidelines without reference to the background of a particular case or applicant. The Director's letter is in effect no statement of reasons whatsoever." It is also claimed that the Director's position turns the rebuttable presumption against admission into a mandatory one.

 3. The Attorney General's letter-brief outlined above.

 The review this court must provide on appeal is based upon the record made below: the material submitted to the Director by each defendant and the records collected and created by the Director. *State v. White,* 145 *N.J.Super.* 257 (Law Div.1976). The opportunity to present all available evidence existed at the time each defendant made his application; no additional evidence may be offered on appeal. *Id.* at 260. It has been suggested, however, that factual errors made by the Director in his statement of denial may be raised on appeal by affidavit. *State v. Masucci,* 156 *N.J.Super* 272 (Law Div.1978). The burden of presenting information to the Director is upon the defendant; the Director may, but need not, seek out other witnesses and additional information. The "Director's investigation need be no more extensive than in his opinion is necessary to satisfy him that the information he has is sufficient to support his conclusion." *Id.* at 278. "As a general rule, whatever the Director considers must be disclosed to the defendant with the caveat that any information which will embarrass or endanger a source may be exposed to the court through an in camera hearing." *Id.* at 279. Defendants may have discovery of records considered by the Director in evaluating their applications; they are entitled to determine whether their rejection was based upon accurate and relevant factors. *State v. Barath,* 169 *N.J.Super.* 181 (Law Div.1979).

 In the present case it is apparent that both the record produced and the reasons given by the Director and the Attorney General are unsatisfactory for appellate purposes. Defendants, for example, argue that they were provided with only a perfunctory hearing by the Director, that they had no opportu-

nity to present necessary information with which to support their applications. No affidavit or other written material supports these claims. The defendants, in fact, failed to present *any* record to support their appeal. The burden to do so was theirs.

On the other hand, the Director and the Attorney General failed to present sufficient reasons for their denial of admission. Their obligation to do so is set forth in a parade of cases:

*State v. Leonardis,* 71 *N.J.* 85 (1976):

> We find that a statement of reasons for denial of consent by a prosecutor should ordinarily be afforded to all applicants for admission to a PTI program. [at 119.]

*State v. Atley,* 157 *N.J.Super.* 157 (App.Div.1978):

> It is, of course, elementary that no matter how great a deference the Court is obliged to accord the administrative determination which it is being called upon to review, it has no capacity to review at all unless there is some kind of reasonable factual record developed by the administrative agency and the agency has started its reasons grounded in that record for its action. The proper operation of pretrial diversionary programs has always contemplated that rejected applicants will be furnished an adequate statement of reasons. [citations omitted; at 163.]

*State v. Sutton,* 80 *N.J.* 110 (1979):

> A statement of reasons both facilitates judicial review of the prosecutorial determination and allows a defendant a meaningful opportunity to rebut the premise upon which that determination was based. [at 116–117.]

*State v. Maddocks,* 80 *N.J.* 98 (1979):

> Notions of fundamental fairness dictate that the prosecutor's allegations be stated with sufficient specificity so that the defendant has a meaningful opportunity to demonstrate that they are unfounded. Indeed, absent some indication of the underlying basis of the prosecutor's belief, a trial court will be unable to review that determination. [at 109.]

*Guideline 8* provides:

> The decisions and reasons therefor made by the designated judges (or Assignment Judges), prosecutors and program directors in granting or denying defendants' applications for PTI enrollment, in recommending and ordering termination from the program or dismissal of charges, in all cases must be reduced to writing and disclosed to defendant.

Stripped to their essentials, the reasons provided by the Director and adopted by the Attorney General, were: (1) there were no compelling reasons to justify admission to the pro-

gram; (2) the crime involved an organized criminal activity or a continuing criminal enterprise which normally prevents enrollment; and (3) the need to protect society from such activities outweighs the benefits to be derived from diversion. These are not adequate. Simply parroting the language of the Guidelines is not acceptable. Ultimate conclusions are not informative; underlying facts and reasons must be set forth. As stated in *State v. Atley, supra,* the court cannot review the administrative determination without a "reasonable factual record developed by the administrative agency" and a statement of "reasons grounded in that record for its action." *Id.* 157 *N.J.Super.* at 163.

As a consequence of these deficiencies all of these appeals must be remanded to the Director for completion of the record. He shall permit the defendants to submit such additional information as they wish to offer which bears upon the application and shall then reconsider his position in the light of this evidence as well as this opinion. The Attorney General must do the same. The reconsideration is to be approached as though the applications have been filed for the first time. No bias may attach from the fact of the earlier denials. The Director and the Attorney General do not occupy adversarial positions to PTI applicants when first considering the question of admission. Further, the defendants must be considered *individually;* it is not proper to treat them together because they are involved in an alleged criminal activity together. If the applications are again denied the facts and the reasons supporting the denials must be set forth. The defendants, at their option, then may renew their appeals.

At oral argument the meaning of the term "compelling reasons", set forth in *Guideline 3* (i), was examined. The Guidelines themselves do not contain a definition. The necessity for definition at least on a case-by-case basis, and the difficulty of finding one, is illustrated by the defense claims. The defendants have no prior criminal records. All of them

claim to have been good citizens, to have made valuable contributions to society, to have been unknowingly or only modestly involved in the alleged criminal activities, and to be excellent subjects for rehabilitation. They argue that these circumstances constitute "compelling reasons." The Director and the Attorney General disagree.

█ What are "compelling reasons?" Does honorable military service, the winning of the Carnegie medal, the financial support of disabled relatives, the pursuit of a religious life, charitable undertakings, the accumulation of wealth, or the graceful acceptance of poverty constitute "compelling reasons?" Neither defense counsel nor the Attorney General nor the Director could provide any definition of the term or any example of circumstances that should invite its application beyond an unhelpful recitation of cases in which reasons had been found to be "compelling." This may present difficulties. Once the defendants present what they claim to be "compelling reasons", the burden is upon the Director and the Attorney General to set forth *reasons* why the facts presented are not "compelling". Without such reasons, a denial of admission will be inadequate, possibly based upon a subjective reaction and arbitrary.

█ These difficulties are noted here, however, only to permit them to be understood and addressed in the course of the remand. There is no suggestion that the Director of the Attorney General does not have adequate reasons for denial of any application or that any denial would be appropriate. The inability to set forth reasons for denying admission, if such should prove to be the case, does not necessarily mean the defendants are entitled to enter a PTI program. The Director and the Attorney General are permitted to consider other factors relating to PTI admission in reaching their conclusion. The following are examples: the nature of the crime itself, *State v. Bender*, 80 *N.J.* 84, 89 (1979); problems relating to the prosecution of related cases, *N.J.S.A.* 2C:43–12, subd. e (15) and

(16); local public anxiety attaching to the misconduct charged, *State v. Sutton, supra,* 80 *N.J.* at 119; and genuine concerns about prospects of rehabilitation. If these factors are of moment, however, they have not been articulated in the present record.