**RECORD IMPOUNDED**

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R. 1:36-3.

> SUPERIOR COURT OF NEW JERSEY
> APPELLATE DIVISION
> DOCKET NO. A-1637-17T2

STATE OF NEW JERSEY,

       Plaintiff-Appellant,

v.

LORRAINE S. MORGAN,

       Defendant-Respondent.

_____

> Submitted July 9, 2018 — Decided July 19, 2018
>
> Before Judges Yannotti and Haas.
>
> On appeal from Superior Court of New Jersey,
> Law Division, Ocean County, Indictment No. 17-
> 06-0907.
>
> Joseph D. Coronato, Ocean County Prosecutor,
> attorney for appellant (Samuel Marzarella,
> Supervising Assistant Prosecutor, of counsel;
> William Kyle Meighan, Senior Assistant
> Prosecutor, on the briefs).
>
> Roberts & Teeter, attorneys for respondent
> (Michael B. Roberts, on the brief).

PER CURIAM

The State appeals from the December 4, 2017 Law Division order admitting defendant Lorraine S. Morgan[1] into the Pre-Trial Intervention (PTI) program over the prosecutor's objection. The State argues that the trial court substituted its judgment for that of the prosecutor, and that the prosecutor's decision to reject defendant's PTI application was based upon a thorough consideration of all appropriate factors and did not constitute a gross and patent abuse of discretion. Having considered defendant's contentions in light of the record and the applicable law, we reverse.

By way of background, this matter returns to us following a remand ordered in our previous opinion. State v. Morgan, Docket No. A-3766-15 (App. Div. Mar. 13, 2017) (slip op. at 9-10). In that case, the State appealed from a March 17, 2016 order admitting defendant to PTI over its objection in connection with a prior indictment alleging the same offense against defendant as that involved in the present appeal. Id. at 1.

While that appeal was pending, the trial court dismissed the indictment against two of her codefendants, Walter C. Uszenski and Jacqueline Halsey, and all but two of the charges against Morgan.

_____

[1] Defendant Lorraine S. Morgan and her husband, codefendant Andrew J. Morgan, share the same surname. To avoid confusion, we refer to Lorraine S. Morgan as "defendant" and to Andrew Morgan as "Morgan."

Id. at 7-8.  In view of this development, we remanded the matter so that defendant could file her own motion to dismiss the indictment against her.  Id. at 9.  In so ruling, we vacated the trial court's order permitting defendant to enter the PTI program, without prejudice to her right to file another application if her motion to dismiss the indictment was unsuccessful.  Ibid.  We did not retain jurisdiction.  Id. at 10.

On remand, the trial court dismissed the indictment against defendant.  On June 20, 2017, however, a grand jury returned a new, twelve-count indictment against defendant and her three co-defendants.

Turning to the present appeal, we begin by summarizing the factual basis the State presented in support of the June 20, 2017 indictment.  In 2013, codefendant Uszenski was serving as the superintendent of the Brick Township Public School District (district).  His daughter, codefendant Halsey, had a child (Uszenski's grandchild), who was not yet five years old.  Therefore, the child was not eligible to attend kindergarten.

The State alleges that sometime in early 2013, Uszenski decided that his grandchild should receive free full-time, pre-school day care and free transportation to these services, together with related services, at the district's expense.  In order to accomplish this goal, Uszenski, with Halsey's concurrence, sought

to have his grandchild classified as a child with a disability, which would make him eligible for these services at no cost to Halsey. The State asserts that the grandchild was not disabled, and was not entitled to these services at taxpayer expense because he was still of pre-school age.

In order to receive special education services, the grandchild needed an Individualized Education Program (IEP) that was approved by the district's Director of Special Services (Director). The State alleges that in June 2013, Uszenski decided to remove the current Director from her position and install Morgan in this post. Morgan, who was married to defendant, had previously taught in a special education program in New York. However, in 1989, Morgan was arrested for, and later convicted of, felony drug charges in that state. Uszenski and Morgan did not disclose those convictions in connection with Morgan's appointment as Director.

For a number of years prior to Morgan's appointment, defendant worked as a middle school principal in another school district. It is not clear from the record whether she was employed during the 2012-2013 school year. However, three weeks after Morgan was retained, Uszenski recommended that the district's Board of Education (Board) hire defendant as the district's Academic Officer. According to the State, this position did not exist in the district prior to defendant's appointment.

4                                                            A-1637-17T2

The State asserts that Halsey then submitted a fraudulent application for special services for Uszenski's grandchild, including the pre-school day care program. In response, Morgan prepared a fraudulent IEP for the grandchild on July 11, 2013, which approved his placement in the program, together with transportation, at public expense. The grandchild entered the program later in July, and continued receiving these services through June 2014. The State estimated that these services cost taxpayers over $50,000.

In December 2013, Morgan left his position with the district. However, the State alleges that because of his relationship with defendant, who remained one of the district's highest ranking officials, Morgan continued to have considerable influence over the operation of the special services department.

In June 2014, Halsey asked the district to declassify her child, who was now five years old and ready to enter kindergarten in September 2014. The State alleges that Halsey made this request because, as a kindergarten student, the child would now be able to attend public school full-time with bus transportation and, therefore, was no longer in need of the free pre-school day care and transportation services provided to pre-school special needs students. Because of Halsey's action, the child was no longer

classified as a child in need of special education services and, therefore, he no longer had an IEP in place.

Nevertheless, Halsey was still intent on securing extra academic and counseling services for Uszenski's grandchild, even though he was not entitled to them because he was no longer classified as a special needs student. In furtherance of this scheme, the State alleges that Morgan contacted Susan Russell, his replacement as Director, about setting up in-home counseling services for the grandchild. Morgan falsely told Russell that a "504 plan," which a child had to have in order to receive such services, would be in place and that Russell needed to arrange for the counseling services for the grandchild. He warned Russell, "You really don't want to piss off . . . Superintendent [Uszenski]. You just got this job."

The State alleges that defendant was Russell's superior and was responsible for authorizing payment for these types of services. Morgan told Russell that defendant was aware of the plan to provide in-home counseling for Uszenski's grandchild, but that the request for payment would first be sent to Russell. Morgan told Russell to bring the voucher form directly to defendant, who would then authorize the payment.

Based upon Morgan's representation, Russell believed the child had a 504 plan. Therefore, in August 2014, Russell called

Rachael Gough, the district's Director of Special Education,[2] and told her to set up the services. Russell also told Gough that she should send her bill for the counseling services to Russell, rather than through the regular channels.

Gough was unable to find an IEP or a 504 plan for the grandchild because he had been declassified. Nevertheless, Gough followed Russell's direction and went to Halsey's home to meet with her concerning the grandchild. Gough then conducted two, one-hour in-home counseling sessions with the grandchild, but determined that the child did not need counseling. Gough advised Russell of her determination, and Russell learned for the first time that the grandchild did not have a 504 plan in place.

Gough did not follow Russell's instructions concerning the submission of her request for payment. Rather than sending this request to Russell, Gough sent it to a secretary in the special services department. The secretary forwarded it to Russell and told her that the request for payment could not be processed because it was not accompanied by a medical note authorizing "bedside" services for the grandchild. Russell then contacted Gough and told her to send the request directly to her. Gough did so.

---

[2] Gough was also a social worker.

A-1637-17T2

On October 2, 2014, defendant approved payment for Gough's services even though the required documentation supporting it was never provided. Based upon defendant's approval, the district paid $141 for these unnecessary services for the grandchild.

Although Morgan had told Russell that defendant would approve the payment for the services, Russell was surprised that she actually did so. Russell stated that defendant was normally very careful in her scrutiny of in-home counseling requests and, in other cases where the required documentation was missing, defendant had returned the requests to Russell without her approval. Shortly after defendant approved the payment to Gough, the scheme involving Uszenski's grandchild came to light.

After considering these facts, the grand jury charged defendant in count four of the June 20, 2017 indictment with third-degree official misconduct, in violation of N.J.S.A. 2C:30-2 and N.J.S.A. 2C:2-6.[3] Defendant again applied for PTI. Eligibility

---

[3] The grand jury also charged Uszenski, Morgan, and Halsey with a number of offenses. Specifically, the indictment charged Uszenski with four counts of second-degree official misconduct, N.J.S.A. 2C:30-2 and N.J.S.A. 2C:2-6 (counts one, five, nine, and ten); two counts of third-degree theft by deception, N.J.S.A. 2C:20-4 (counts three and eight); and one count of second-degree pattern of official misconduct, N.J.S.A. 2C:30-7 (count eleven). The indictment charged Morgan with three counts of second-degree official misconduct (counts one, two, and nine); two counts of third-degree theft by deception (counts three and eight); two counts of fourth-degree false swearing, N.J.S.A. 2C:28-2(a)

for PTI is based primarily on "the applicant's amenability to correction, responsiveness to rehabilitation and the nature of the offense." N.J.S.A. 2C:43-12(b). "Admission [into the PTI program] requires a positive recommendation from the PTI director and the consent of the prosecutor." State v. Negran, 178 N.J. 73, 80 (2003) (citing State v. Nwobu, 139 N.J. 236, 246 (1995)).

A determination whether to admit a defendant is "'primarily individualistic in nature[,]' and a prosecutor must consider an individual defendant's features that bear on his or her amenability to rehabilitation." Nwobu, 139 N.J. at 255 (quoting State v. Sutton, 80 N.J. 110, 119 (1979)). In determining eligibility, prosecutors and PTI program directors must consider the factors set forth in N.J.S.A. 2C:43-12(e), Rule 3:28, and the accompanying Guidelines to that Rule (Guidelines), which "elucidate the 'purposes, goals, and considerations relevant to PTI.'" Negran, 178 N.J. at 80 (quoting State v. Brooks, 175 N.J. 215, 223 (2002)).[4]

---

(counts six and seven); and one count of pattern of official misconduct (count twelve). Finally, the indictment charged Halsey with one count of second-degree official misconduct (count one); and one count of third-degree theft by deception (count three).

[4] Effective July 1, 2018, the Supreme Court adopted new rules governing the PTI application process, Rules 3:28-1 through 3:28-10. Because these new Rules were obviously not in effect when defendant's application was considered by the PTI director, the prosecutor, and the trial court, we apply the standards in effect at that time.

After reviewing defendant's application, and interviewing her, the PTI director issued a written report, recommending that defendant not be admitted into the program. The prosecutor agreed with this recommendation. In the prosecutor's brief submitted to the trial court, the prosecutor reviewed each and every one of the seventeen factors set forth in N.J.S.A. 2C:43-12(e), Rule 3:28, and the accompanying Guidelines.

Addressing the nature of the offense and the facts of the case, N.J.S.A. 2C:43-12(e)(1) and (2), the prosecutor noted that N.J.S.A. 2C:43-12(b)(2)(a) specifically provides that "[t]here shall be a presumption against admission into [the PTI program] for . . . a defendant who was a public officer or employee whose offense involved or touched upon his [or her] public office or employment[.]" A similar presumption against admission is set forth in PTI Guideline 3(i) of Rule 3:28. That Guideline states that although any defendant is potentially eligible for PTI, "[i]f the crime was . . . a breach of the public trust where admission to a PTI program would deprecate the seriousness of defendant's crime, the defendant's application should generally be rejected." Guidelines for Operation of Pretrial Intervention in New Jersey, Pressler & Verniero, Current N.J. Court Rules, Guideline 3(i)(1)(c), following R. 3:28 at 1291 (2018). While these presumptions are rebuttable, our Supreme Court has held "that

overcoming [them] requires showing '<u>something extraordinary or unusual</u>' about the defendant's background." <u>State v. Roseman</u>, 221 N.J. 611, 622-23 (2015) (emphasis added) (quoting <u>Nwobu</u>, 139 N.J. 252-53).

The prosecutor also pointed out that defendant's offense did not constitute a "victimless" crime under N.J.S.A. 2C:43-12(e)(4) and (7). In this regard, N.J.S.A. 2C:43-12(a)(3) specifically provides that PTI "[p]rovides a mechanism for permitting the least burdensome form of prosecution possible for defendants charged with "victimless" offenses, <u>other than defendants who were public officers or employees charged with offenses that involved or touched their office or employment</u>[.]" (Emphasis added).

In addition, the prosecutor found that the need for prosecution of this crime of official misconduct outweighed the value of possible supervisory treatment based upon defendant's intentional action in approving the unsupported request for payment. N.J.S.A. 2C:43-12(e)(14) and (17). Although defendant was not charged as a co-conspirator with Uszenski, Morgan, and Halsey in the events involving Uszenski's grandchild prior to September 2014, the prosecutor stated that defendant was so intertwined in the overall scheme that her participation in PTI would affect the prosecution of the codefendants. N.J.S.A. 2C:43-12(e)(15) and (16).

At the same time, the prosecutor considered all of the applicable mitigating factors, including defendant's age, educational background, employment history, and lack of a prior criminal record. He also noted the letters of support defendant received from friends and colleagues. N.J.S.A. 2C:43-12(e)(3), (9), (12), and (13). However, the prosecutor concluded that these nonidiosyncratic factors did not outweigh the serious nature of the offense and the facts of this case.

Defendant filed a motion to compel her entry into PTI over the prosecutor's objection. Following oral argument, the trial judge rendered a written decision, reversed the prosecutor's determination, and admitted defendant into PTI.[5] Although the judge found that the prosecutor had considered all of the relevant factors, he determined that the prosecutor had incorrectly weighed them in denying defendant's application.

In so ruling, the judge stated that defendant was only charged in one count of the indictment and, therefore, played a lesser role than her codefendants. The judge also found significant that defendant had only caused $141 in public funds to be misused even though, by definition, any amount less than $200 constitutes a

---

[5] Pursuant to <u>Rule</u> 3:28(f), the order enrolling defendant into the PTI program was automatically stayed when the State filed its notice of appeal.

third-degree offense under N.J.S.A. 2C:30-2.  The judge noted that defendant disputed that she had any responsibility to review payment requests or supporting documentation concerning them and, instead, simply approved payment for services that had already been performed.

The judge further stated that the prosecutor should have considered that if both defendant and Morgan were sentenced to prison, their child would be left without support.  However, the judge did not acknowledge that their child was now an adult.

While noting there was a presumption against PTI admission for an individual, like defendant, who is charged with official misconduct, the judge found that this presumption was overcome by such factors as defendant's age, educational background, and lack of prior criminal record.  The judge also credited defendant's claim that she now suffered from depression and anxiety as the result of her indictment, but failed to mention that these conditions had no causal connection to her alleged commission of the underlying offense.

In a conclusory final paragraph, the judge found that the State's prosecution of the three codefendants would not be adversely affected if defendant was admitted to PTI.  The judge based this finding on his observation that defendant was not charged with conspiring with the codefendants to commit the

13    A-1637-17T2

offenses that preceded her involvement in the scheme in September 2014. This appeal followed.

On appeal, the State argues the judge substituted his judgment for that of the prosecutor, and that the prosecutor's decision to reject defendant's PTI application was based upon a thorough review of all appropriate factors and did not constitute a gross and patent abuse of discretion. We agree.

Established precedents guide our task on appeal. The decision whether to accept or reject a defendant's PTI application is essentially a prosecutorial function. State v. Leonardis, 73 N.J. 360, 381 (1977). Therefore, a "[d]efendant generally has a heavy burden when seeking to overcome a prosecutorial denial of his [or her] admission into PTI." State v. Watkins, 193 N.J. 507, 520 (2008). "In respect of the close relationship of the PTI program to the prosecutor's charging authority, courts allow prosecutors wide latitude in deciding whom to divert into the PTI program and whom to prosecute through a traditional trial." Negran, 178 N.J. at 82.

Indeed, "[b]ecause of the recognized role of the prosecutor, we have granted enhanced deference to prosecutorial decisions to admit or deny a defendant to PTI." State v. DeMarco, 107 N.J. 562, 566 (1987) (citing State v. Dalglish, 86 N.J. 503, 513-14 n.1 (1981)). Accordingly, there is an "expectation" by the Supreme

Court that a prosecutor's decision to reject a PTI applicant "will rarely be overturned." State v. Wallace, 146 N.J. 576, 585 (1996) (quoting Leonardis, 73 N.J. at 380).

"Issues concerning the propriety of the prosecutor's consideration of a particular [PTI] factor are akin to 'questions of law[.]'" State v. Maddocks, 80 N.J. 98, 104 (1979). "Consequently, on such matters an appellate court is free to substitute its independent judgment for that of the trial court or the prosecutor should it deem either to have been in error." Id. at 105. While we exercise de novo review over the propriety of considering a certain PTI factor, we afford prosecutors "broad discretion to determine if a defendant should be diverted." State v. K.S., 220 N.J. 190, 199 (2015). This discretion arises out of the prosecutor's charging authority. Id. at 200.

It has been long-established that the scope of judicial review of a prosecutor's decision to reject a defendant's application into PTI is "severely limited" and "serves to check only the 'most egregious examples of injustice and unfairness.'" Negran, 178 N.J. at 82 (quoting Leonardis, 73 N.J. at 384). "Prosecutorial discretion in this context is critical for two reasons. First, because it is the fundamental responsibility of the prosecutor to decide whom to prosecute, and second, because it is a primary purpose of PTI to augment, not diminish, a prosecutor's options."

15

Nwobu, 139 N.J. at 246 (quoting State v. Kraft, 265 N.J. Super. 106, 111-12 (App. Div. 1993)).

"A trial court does not evaluate a PTI application 'as if it [stands] in the shoes of the prosecutor.'" State v. Hoffman, 399 N.J. Super. 207, 216 (App. Div. 2008) (quoting Wallace, 146 N.J. at 589). Moreover, a trial court "cannot substitute its own judgment for that of the prosecutor even when 'the prosecutor's decision is one which the trial court disagrees with or finds to be harsh." Ibid. (quoting Kraft, 265 N.J. Super. at 112-13). Therefore, the question presented to a trial court reviewing a defendant's appeal from a prosecutor's denial of a PTI application "is not whether [the court] agree[s] or disagree[s] with the prosecutor's decision, but whether the prosecutor's decision could not have been reasonably made upon weighing the relevant factors." Nwobu, 139 N.J. at 254.

In order for a defendant to succeed in overturning the prosecutor's denial of his or her admission into PTI, the defendant must "clearly and convincingly establish that the prosecutor's decision constitutes a patent and gross abuse of discretion." Watkins, 193 N.J. at 520. An abuse of prosecutorial discretion is established when a defendant demonstrates "that a prosecutorial veto (a) was not premised upon a consideration of all relevant factors, (b) was based upon a consideration of irrelevant or

16

inappropriate factors, or (c) amounted to a clear error in judgment[.]" Roseman, 221 N.J. at 625 (quoting State v. Bender, 80 N.J. 84, 93 (1979)). "In order for such an abuse of discretion to rise to the level of 'patent and gross,' it must further be shown that the prosecutorial error complained of will clearly subvert the goals underlying" PTI. Ibid.

Guided by these principles, we conclude that the trial judge mistakenly ordered defendant's admission into PTI over the prosecutor's objection. We are convinced from our review of the record that the prosecutor considered, weighed, and properly balanced all of the requisite factors, including those personal to defendant as well as the facts and circumstances of the offense.

As noted above, the trial judge acknowledged that the prosecutor addressed all the factors listed in N.J.S.A. 2C:43-12(e). However, the State did much more than that. In its submission in opposition to defendant's application, the prosecutor identified the facts it considered, together with how it weighed those facts in its analysis. There is no evidence in the record that the prosecutor considered any improper or irrelevant factors.

The trial judge mistakenly found that the State gave short shrift to the personal facts of defendant's case, such as this being her first indictable offense, her employment history, and

17

her child care responsibilities. Again, the State not only considered these factors, it explained how it weighed them.

On the other hand, the judge gave undue emphasis to a number of the personal factors, especially defendant's lack of a criminal record. With regard to defendant's clean prior record, we observe that our Supreme Court has held that a defendant's "status as a first-time offender" is not the type of "extraordinary or unusual" circumstance needed to overcome a statutory presumption against admission into PTI. Roseman, 221 N.J. at 623 (citing Nwobu, 139 N.J. at 241, 252-53).

The judge's overemphasis of defendant's personal factors underscores the major error in the decision under review. The decision was predicated on the judge's own assessment of the PTI factors, rather than on a determination of whether the prosecutor failed to consider all relevant factors, considered inappropriate factors, or clearly erred in his judgment. By highlighting only the mitigating factors, the judge ignored the nature of the offense, the facts of the case, and the impact placing defendant in PTI would have on the prosecution of her codefendants.

As noted in our discussion of the judge's decision, the judge mistakenly determined that third-degree official misconduct was a "minor offense." However, the Legislature has expressly determined that there should be a presumption against admission

18

into PTI for anyone charged with this offense. N.J.S.A. 2C:43-12(b)(2)(a). Our Supreme Court has established a similar presumption in PTI Guideline 3(i)(1)(c) of <u>Rule</u> 3:28.

The trial judge briefly mentioned this presumption but, once again, highlighted facts which did not support a conclusion that defendant was able to overcome the presumption. The judge downplayed defendant's involvement in the overall official misconduct scheme, finding that she only diverted $141 of public money to provide unneeded services to Uszenski's grandchild. The judge also noted that Uszenski, Morgan, and Halsey played a larger part in the enterprise than she did.

However, the Legislature has determined that even if a public employee steals or diverts only one dollar of taxpayer money, the employee has committed a third-degree offense, punishable by up to five years in prison, with a mandatory minimum sentence of two years. N.J.S.A. 2C:30-2(b); N.J.S.A. 2C:43-6.5(a). Thus, the fact that defendant was "only" charged with diverting $141 to help the daughter of the man who gave her and Morgan high-ranking positions with the district is of little moment. Moreover, the Supreme Court has held that a defendant's assertion that he or she "played a relatively minor role in the" overall crime is simply not the type of "extraordinary or unusual" fact needed to overcome

a statutory presumption against admission into PTI. Roseman, 221 N.J. at 623 (citing Nwobu, 139 N.J. at 252-53).

The trial judge cited, but did not fully analyze, the Court's decision in Roseman, and stated it supported defendant's admission into PTI. We disagree.

In Roseman, the defendant was the mayor of a town and, as a result of this official position, both he and his wife received health benefits provided by the town. 221 N.J. at 616. The defendant and his wife then divorced, and the defendant told the town clerk that he and his wife were no longer married. Ibid. Nevertheless, the town failed to remove the former spouse from the town's health plan. Ibid. When the defendant later discovered this error, he promptly reported it and had his former spouse taken off the plan. Id. at 617. His former spouse repaid the benefits she had received under the plan. Ibid.

A subsequent audit revealed that other individuals who were no longer entitled to health benefits were mistakenly still listed as insureds under the plan. Ibid. The State charged the defendant with a number of offenses, including second-degree official misconduct, N.J.S.A. 2C:30-2. Ibid. The other individuals who also mistakenly received benefits were not charged. Ibid.

Our Supreme Court determined that the circumstances of the defendant in the Roseman case were "compelling and idiosyncratic"

and, under these unusual circumstances, supported the defendant's admission into PTI. Id. at 626. The Court found it significant that "[t]he criminal violations were essentially self-reported, and occurred through an administrative error after [the defendant] correctly advised the clerk of his marital status change and noted the change on his W-4 form." Ibid. The Court also found it compelling that the defendant "took immediate action to ameliorate the problem by removing [his former spouse] from [the town's plan] and initiating an internal audit of all [of the town's] health insurance policy holders." Ibid.

Unlike the defendant in Roseman, defendant did not demonstrate any "compelling or idiosyncratic" circumstances enabling her to overcome the strong presumption against admission into PTI. Ibid. Defendant did not turn herself in, blow the whistle on Uszenski, Morgan, and Halsey, or take any immediate action to correct what had occurred. Instead, she accepted the emoluments of the high-ranking position Uszenski arranged for her, and then approved the payment for counseling services to which Uszenski's grandchild was obviously not entitled. Under these circumstances, the trial judge erred in concluding there were "extraordinary and unusual" facts that overcame the presumption against PTI under Roseman.

Finally, the trial judge mistakenly found that admitting defendant into PTI would not adversely affect the State's prosecution of her codefendants. As noted above, the judge based this ruling on his observation that defendant was not charged with conspiracy in the indictment. However, that is too facile of an analysis to withstand scrutiny.

Where, as here, "[t]wo or more defendants . . . are alleged to have participated in the same act or transaction or in the same series of acts or transactions constituting an offense or offenses[,]" a joint indictment and a joint trial of codefendants is appropriate. R. 3:7-7. Indeed, a joint trial is preferable where "much of the same evidence is needed to prosecute each defendant[.]" State v. Sanchez, 143 N.J. 273, 281 (1996) (quoting State v. Brown, 118 N.J. 595, 605 (1990)).

As the prosecutor pointed out in its opposition to defendant's application, the State planned to prove at trial that although defendant was only charged in one count of the indictment, her role was interconnected with that played by her three codefendants such that the overall scheme would not have succeeded or lasted for as long as it did without her active participation. Whether or not the State will be successful with its theory of the case is a matter that must be determined either on a motion to dismiss or by a jury trial. However, because "much of the same evidence

is needed to prosecute" all four defendants, the fact that the State decided to charge defendant with her codefendants in a single indictment did not compel her admission into PTI.  Sanchez, 143 N.J. at 281.

In sum, the prosecutor evaluated the relevant factors and exercised permissible discretion in rendering his determination.  Under these circumstances, we discern no patent and gross abuse of discretion by the prosecutor in denying defendant's admission into PTI.  While it is possible that reasonable minds could differ in analyzing and balancing the applicable factors in this case, judicial disagreement with a prosecutor's reasons for rejection, as occurred here, does not equate to prosecutorial abuse of discretion so as to merit a judicial override of the prosecutor's decision.  DeMarco, 107 N.J. at 566-67.

Reversed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1637-17T2