# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3571-18T4

STATE OF NEW JERSEY,

      Plaintiff-Appellant,

v.

KEVIN S. RANDLE,

      Defendant-Respondent.

_____

Submitted September 10, 2019 – Decided September 25, 2019

Before Judges Fisher and Accurso.

On appeal from the Superior Court of New Jersey, Law Division, Hudson County, Indictment No. 18-07-0597.

Esther Suarez, Hudson County Prosecutor, attorney for appellant (Ryan Michael Galler, Assistant Prosecutor, on the brief).

Joseph E. Krakora, Public Defender, attorney for respondent (Stefan Van Jura, Assistant Deputy Public Defender, of counsel and on the brief).

PER CURIAM

Near noon on March 29, 2018, a police detective observed a minivan with Texas license plates in a Walmart parking lot in North Bergen. Concerned by the behavior of its occupants,[1] and mindful those who traffic in narcotics and weapons often come to this area from Texas, the detective eventually approached the vehicle. The driver – defendant Kevin Randle – said he was visiting family in New York and had slept in the vehicle in the Walmart parking lot overnight; he said that he and his wife, the female in the vehicle, planned on driving back to Texas that day. The detective Mirandized[2] defendant and asked whether he had anything in the vehicle. Defendant replied that he had a utility knife and a handgun in the rear of the van. Defendant then consented to the detective's request to search the vehicle.

The search uncovered a large machete near the driver's seat and not one but two 9mm handguns, both of which were loaded with hollow point bullets. Defendant acknowledged ownership of these weapons; he asserted the handguns

---

[1] The vehicle moved about and parked in many locations within the Walmart lot. The vehicle's occupants were observed walking in and out of Walmart, and a nearby Wendy's, apparently without making any purchases. In one instance, the Detective observed defendant walk into the nearby Wendy's and return wearing different clothing.

[2] Miranda v. Arizona, 384 U.S. 436 (1966).

A-3571-18T4

were legally purchased in Texas and claimed he was unaware he could not lawfully be in possession of them in New Jersey.

Defendant was indicted and charged with two counts of second-degree unlawful possession of a weapon, N.J.S.A. 2C:39-5(b)(1), fourth-degree unlawful possession of a weapon (the machete), N.J.S.A. 2C:39-5(d), and possession of a certain prohibited device (hollow point bullets), N.J.S.A. 2C:39-3(f).

Defendant applied for entry into the pretrial intervention program (PTI), which is governed by N.J.S.A. 2C:43-12 to -22, Rule 3:28, and the Guidelines for Operation of Pretrial Intervention in New Jersey (the Guidelines), which are now part of Rule 3:28. In 2008, the Attorney General issued a "Directive to Ensure Uniform Enforcement of the 'Graves Act,'" which, at page 8, mentioned the "expect[ation]" that when a defendant is subject to the Graves Act,[3] "prosecutors will consent to a defendant's admission to PTI only in rare cases involving extraordinary and compelling circumstances that fall outside the heartland of the legislative policy to deter unauthorized gun possession"; the Attorney General cited, as an example of a compelling circumstance, an event where the defendant had the lawful right to acquire and possess firearms in a

---

[3] N.J.S.A. 2C:43-6.

different state and presence in this State "was incident to lawful travel." See State v. Waters, 439 N.J. Super. 215, 236 (App. Div. 2015). In 2014, the Attorney General clarified this view and suggested a modified approach for out-of-state visitors charged with Graves Act violations.[4]

The criminal division manager's office recommended acceptance of defendant's PTI application. The prosecutor disagreed, prompting defendant to seek relief in the trial court. For reasons expressed in a written decision, the judge granted defendant's motion and ordered his enrollment in the program. Because the prosecutor opposed that relief, objected to the judge's intention to permit PTI without entry of a guilty plea, and expressed an intent to appeal, the judge stayed her order pending further order from this court.

In appealing, the State reprises its arguments that the motion judge erred in permitting PTI enrollment over the prosecutor's objection and without requiring a guilty plea. Under the circumstances, we are compelled to remand for further explanation from the prosecutor, particularly with regard to her consideration of the Attorney General's 2014 Clarification.

---

[4] The precise role this 2014 Clarification plays is not entirely clear. In dictum, we have said that the 2014 Clarification "is simply a statement of the current policy of the Attorney General [and] does not change the criteria for PTI set forth in the Act, Rule 3:28, or the Guidelines." Waters, 439 N.J. Super. at 238-39.

The problem with the proceedings so far is that the prosecutor's expressed objection was not fully informative. In opposing the criminal division manager's decision to enroll defendant in PTI, the prosecutor wrote generally that, after reviewing "the facts of defendant's case" and in consideration of N.J.S.A. 2C:43-12(e), Rule 3:28, and the Guidelines' third factor – which creates a presumption against PTI admission when a defendant is charged with a second-degree offense – the prosecutor found defendant unsuitable for PTI. In providing specifics, the prosecutor wrote that the objection was based on the nature and facts of the case. As to the nature of the case, the prosecutor observed that the matter included two second-degree handgun possession charges, and a fourth-degree weapon possession charge, and that all those weapons were located in the defendant's vehicle. As for "the facts of this case," the prosecutor stated that "defendant possess[ed] two loaded handguns in his vehicle," that the "guns were loaded with a combined 40 hollow point rounds," and that "a large machete was located near [defendant's] seat" in the vehicle. The prosecutor did not mention the factors that did not support the opposition, nor did the prosecutor express whether or how the decision to oppose the PTI application was impacted by the factors expressed by the then Acting Attorney General in his 2014 Clarification.

The 2014 Clarification expressed concern about "[r]ecent events" that "focused public attention on how prosecutors exercise discretion in cases where a resident of another state brings into New Jersey a firearm that had been acquired lawfully and that could be carried lawfully by that visitor in the visitor's home jurisdiction." In such matters, the Clarification directed prosecutors, in exercising their discretion and in weighing all the other factors imposed by law, to "consider the following special facts":

- "Minimal Exposure of the Firearm to Persons in New Jersey": The Clarification explained that this factor requires consideration of whether others would be exposed to the dangers posed by the weapon by "focusing on the weapon's accessibility while the defendant would be interacting with other persons while in this State." This factor also requires consideration of "the time during which the unlawfully-possessed firearm would present a risk to anyone in New Jersey," giving as an example the minimal risk of an individual traveling through New Jersey on an interstate highway "with few if any stops" as compared to "a more protracted visit, or multiple visits."

- The gun offense was "Isolated and Aberrational": This requires consideration of whether the defendant "is otherwise a law-abiding person," requiring consideration of defendant's prior brushes, if any, with the criminal justice system.

- "Volunteering Presence of Firearm to Police": The Clarification suggests that prosecutors

6

consider whether defendant's own initiative revealed to a police officer the presence of a firearm.

- Whether the "Unloaded Firearm" was "Surrender[ed] for Safe-keeping": The Clarification provides a mitigating example of a defendant presenting "an unloaded firearm to a hotel clerk for safekeeping to prevent it from being stolen from defendant's vehicle during a hotel stay."

- "Circumstances Concerning Confusion of New Jersey and Other-state law": The Clarification recognizes that "everyone is presumed to know the law," but that "a claim of inadvertence should be viewed with greater skepticism if defendant was on actual notice" that possession of the weapon was contrary to this State's law.

The Clarification recognized "[t]here is no mathematical formula for evaluating" these circumstances "in relation to the other aggravating and mitigating circumstances that prosecutors must consider," and that it is not "possible to ascribe the precise weight that should be given to any particular circumstance militating for or against admission to PTI."

In objecting, the prosecutor emphasized the accessibility of the handguns, with the additional aggravating factor that the guns were loaded with hollow point bullets. The prosecutor also relied on the accessibility of the machete, apparently within reach of anyone sitting in the driver's seat. These facts

7

certainly provided support for objecting on the basis of the first of the Clarification factors. But the prosecutor's opposing letter made no mention at all of the 2014 Clarification nor can we ferret out from the opposing letter the prosecutor's view of the other 2014 Clarification factors.

In ordering defendant's enrollment in PTI over the prosecutor's objection, the motion judge relied on the prosecutor's failure to mention or discuss the 2014 Clarification; moreover, the judge considered each of the five Clarification factors and concluded they supported PTI admission. We find that the judge was rightfully concerned by the prosecutor's silence on the 2014 Clarification factors but that she also exceeded her limited discretion in making her own observations about the Clarification factors in overruling the prosecutor's objection to defendant's admission into PTI.

In such matters, we start with the proposition that it is the "fundamental responsibility" of the prosecutor to decide whom to prosecute, State v. Kraft, 265 N.J. Super. 106, 111 (App. Div. 1993), and with an acknowledgement that prosecutors have wide latitude in PTI determinations. State v. Wallace, 146 N.J. 576, 582 (1996); State v. Nwobu, 139 N.J. 236, 246 (1995). Deciding whether to admit a defendant into PTI is a "quintessentially prosecutorial function," Wallace, 146 N.J. at 582, that calls for an "individualized assessment of [a

8

defendant's] 'amenability to correction' and potential 'responsiveness to rehabilitation,'" along with a consideration of all the statutory factors and guidelines. State v. Roseman, 221 N.J. 611, 621-22 (2015) (quoting State v. Watkins, 193 N.J. 507, 520 (2008)). A prosecutor's objection to PTI admission is afforded "extreme deference," Nwobu, 139 N.J. at 246, which has also been referred to as "enhanced" or "extra" deference, State v. Baynes, 148 N.J. 434, 443-44 (1997). In short, defendants are saddled with "a heavy burden" when seeking to overcome prosecutorial vetoes. Nwobu, 139 N.J. at 246. And courts may set aside a prosecutor's objection "only" when the prosecutor's decision constitutes a "most egregious example[] of injustice and unfairness." State v. DeMarco, 107 N.J. 562, 566 (1987). To overturn a rejection of a PTI application, a defendant must "clearly and convincing establish that the prosecutor's refusal . . . was based on a patent and gross abuse of . . . discretion." Wallace, 146 N.J. at 582 (quoting State v. Leonardis, 73 N.J. 360, 382 (1977)). An abuse of discretion occurs when the "prosecutorial veto (a) was not premised on a consideration of all relevant factors, (b) was based upon a consideration of irrelevant or inappropriate factors, or (c) amounted to a clear error in judgment." Wallace, 146 N.J. at 583 (quoting State v. Bender, 80 N.J. 84, 93 (1979)). The error complained of rises to the level of a "patent and gross abuse of discretion"

when the prosecutor's abuse of discretion "will clearly subvert the goals underlying Pretrial Intervention." Ibid.

The motion judge – in light of the prosecutor's silence on the matter – assumed the prosecutor failed to consider the 2014 Clarification. The judge not only assumed those additional factors were not considered by the prosecutor but also undertook to explain why she thought their consideration favored PTI admission. We conclude that the judge acted precipitously when she assumed what the prosecutor did or didn't consider. And in determining for herself how the five Clarification factors applied or should have been weighed here, the judge mistakenly usurped the prosecutor's role. See Nwobu, 139 N.J. at 253.

When presented with an objection that offered no evidence of the prosecutor's consideration of the 2014 Clarification, the judge should have sought enlightenment from the prosecutor – see Roseman, 221 N.J. at 629 (observing that "the appropriate remedy for an inadequate statement of reasons by the prosecutor" is "ordinarily . . . a remand for further consideration of defendant's application"); State v. K.S., 220 N.J. 190, 200 (2015) (recognizing that a remand "is the proper remedy" when the prosecutor considers inappropriate factors or fails to consider relevant factors); State v. Dalglish, 86 N.J. 503, 509-10 (1981) (noting many reasons that will support a remand,

including a prosecutor's apparent failure to consider all relevant factors) – rather than assume the Clarification went unconsidered and then analyze and weigh those factors herself.

To be sure, the prosecutor's written objection was hardly conducive to promoting the limited judicial review that must occur in such matters. The prosecutor's letter cited the applicable authorities, the fact that defendant was charged with two second-degree weapons offenses, and a few brief comments, which we quoted above, about the accessibility of the handguns and the fact that they were loaded. The letter made no mention of the fifteen other factors set forth in N.J.S.A. 2C:43-12 and made no mention at all of the 2014 Clarification and its additional considerations. The prosecutor's silence on these matters disserves the process; a prosecutor's objection must be made with "sufficient specificity" to provide a defendant with "a meaningful opportunity" to respond. State v. Maddocks, 80 N.J. 98, 109 (1979). An unenlightening statement from the prosecutor deprives the defendant of a fair attempt to overcome an objection, Nwobu, 139 N.J. at 249; State v. Sutton, 80 N.J. 110, 117 (1979), and hampers proper judicial review, State v. Negran, 178 N.J. 73, 82 (2003); Maddocks, 80 N.J. at 109. In light of the prosecutor's silence about the factors outlined in the 2014 Clarification, as well as the absence of any comment about the other fifteen

statutory factors, the judge should have turned the matter back to the prosecutor for further amplification.

* * *

We vacate the order under review and direct the prosecutor to further consider the PTI application and to express in writing what statutory factors supported or weighed against the PTI application; the prosecutor should also describe how the 2014 Clarification impacted the determination. We leave it to the motion judge to schedule the submission of the prosecutor's amplification, any further briefing, and the scheduling of oral argument on defendant's PTI motion.

Vacated and remanded for further proceedings. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-3571-18T4